[This opinion has been published in *Ohio Official Reports* at 87 Ohio St.3d 479.]

THE STATE OF OHIO, APPELLEE, *v*. LINDSEY, APPELLANT.

[Cite as *State v. Lindsey*, 2000-Ohio-465.]

*Criminal law—Aggravated murder—Death penalty upheld, when.*

(No. 97-2003—Submitted September 14, 1999—Decided January 19, 2000.)

APPEAL from the Court of Common Pleas of Brown County, Nos. 97-CR-2015
and 97-CR-2064.

————————————

{¶ 1} In the early morning hours of February 10, 1997, appellant, Carl Lindsey, was at Slammers Bar near Mt. Orab along with Kathy Kerr, Kenny Swinford, A.J. Cox, and Joy Hoop, one of the bar owners. According to the testimony at trial, Joy had wanted her husband, Donald Ray "Whitey" Hoop, dead, and that night appellant told her "he would do him in." Joy then handed a small gun to appellant, and appellant left the bar. Kathy Kerr also decided to leave the bar at that point, but heard a banging noise. As she left she saw Whitey lying on the ground, covered with blood, and appellant standing by the door. According to investigators, Whitey had been shot once in the face while seated inside his vehicle. He apparently then left his vehicle and remained in the parking lot where he was shot again in the forehead. Upon seeing Whitey on the ground, Kerr immediately left for her home, which was only a few hundred feet away. Appellant followed her in his pickup truck, and she allowed him into her trailer to take a shower.

{¶ 2} At approximately the same time that these events were occurring, Brown County Deputy Sheriff Buddy Moore was on patrol and passed Slammers Bar. He noticed and was suspicious of a pickup truck in the parking lot and followed it from the bar south to the Kerr residence. A couple minutes later, he received a police dispatch that a shooting had been reported at Slammers and headed back

toward the bar.  On the way, Moore noticed a car pass him at a high speed going south.  When he arrived at Slammers, he found Whitey Hoop's body lying in the parking lot.  When backup arrived, Moore instructed a state trooper to go to Kerr's trailer, look for the pickup, and make sure that no one left the premises.  Moore also left for Kerr's trailer.

{¶ 3} When Moore arrived at the Kerr residence, he found appellant in the bathroom, soaking his clothes in a tub full of red-tinted water.  He also found a box of .22 caliber ammunition on the sink.  At that point, Moore took appellant into custody.  Upon a search of the premises, police seized from the Kerr trailer appellant's wallet, the ammunition, the clothing in the tub, and a .22 caliber Jennings semiautomatic pistol, which they discovered behind the bathroom door.  They also found and seized Whitey's wallet, which was in a wastebasket in the bathroom.  When discovered, Whitey's wallet was empty, although an acquaintance of Whitey's testified that Whitey habitually carried about $1,000 with him.  Police also found $1,257 in appellant's wallet, although he had been laid off in late December 1996.

{¶ 4} The crime laboratory tested the bloodstains on the items seized by police and found the stains on appellant's jacket, jeans, boot, truck console, steering-wheel cover, driver's seat, driver's-side door, and door handle all to be consistent with Whitey's blood.  One of the stains on the Jennings .22 pistol was also consistent with Whitey's blood.

{¶ 5} Appellant was indicted on two counts of aggravated murder, one under R.C. 2903.01(A) (prior calculation and design) and one under R.C. 2903.01(B) (felony-murder), each count carrying a death specification for felony-murder (R.C. 2929.04[A][7]) and the first count also carrying a specification for murder for hire (R.C. 2929.03[A][2]).  He was also indicted on one theft count and two aggravated robbery counts.  At the close of the evidence, the trial court granted appellant's Crim.R. 29 motion for judgment of acquittal on the murder-for-hire

2

specification. A jury then found appellant guilty on all counts and all remaining specifications and, after a penalty hearing, recommended death. The trial judge merged the two aggravated murder counts and imposed the death sentence.

{¶ 6} The cause is now before this court upon an appeal as of right.

_____

*Thomas F. Grennan*, Brown County Prosecuting Attorney, for appellee.

*H. Fred Hoefle* and *Cathy R. Cook*, for appellant.

_____

**COOK, J.**

{¶ 7} Appellant presents fifteen propositions of law for our consideration. We have carefully reviewed these propositions and have fulfilled our responsibility to independently review the record, weigh the aggravating circumstances against the mitigating factors, and examine the proportionality of the sentence of death. Because R.C. 2929.05 does not require us to address and discuss in opinion form each proposition of law raised in a capital case, we summarily overrule those propositions of law that have been previously resolved by this court and address only those issues that warrant discussion. See, *e.g., State v. Davis* (1996), 76 Ohio St.3d 107, 110, 666 N.E.2d 1099, 1104. For the reasons set forth below, we affirm the judgment of the court of appeals and uphold the sentence of death.

I. Guilt-Phase Issues

A. Hearsay

{¶ 8} In his thirteenth proposition of law, appellant contests the trial court's admission of certain witnesses' testimony. He argues first that the trial court erred by admitting the hearsay statements of Joy Hoop, appellant's alleged co-conspirator, without a proper foundation under the co-conspirator exception in Evid.R. 801(D)(2)(e). Specifically, appellant challenges the testimony of witness A.J. Cox that, after laying a knife on the bar, Joy said: "If that ain't good enough, this right here should take care of it, I got this." The witness did not see what "this"

was but heard a sound like a heavy, metallic object.

{¶ 9} Evid.R. 801(D)(2)(e) provides: "A statement is not hearsay if * * * [t]he statement is offered against a party and is * * * a statement by a co-conspirator of a party during the course and in furtherance of the conspiracy upon independent proof of the conspiracy." Under this rule, the statement of a co-conspirator is not admissible until "the proponent of the statement has made a prima facie showing of the existence of the conspiracy by independent proof." *State v. Carter* (1995), 72 Ohio St.3d 545, 550, 651 N.E.2d 965, 972.

{¶ 10} Appellant argues that the trial court improperly admitted the testimony of Cox before a prima facie case of conspiracy had been made. At the time Cox's testimony was admitted, however, the state had presented the testimony of Kathy Kerr, which was sufficient to set forth a prima facie showing of conspiracy. The offense of conspiracy is defined in R.C. 2923.01 as the agreement to accomplish a particular unlawful object, coupled with an overt act in furtherance thereof, whether remuneration is offered or not. Kerr testified that appellant and Joy were romantically involved, that while discussing Whitey, appellant told Joy "he would do him in," and that she saw Joy give appellant a gun. From this testimony it is reasonable to conclude that a conspiracy existed to kill Whitey and that the transfer of the gun was an overt act in furtherance thereof. We are unpersuaded by appellant's contention that Kerr's impeachment on cross-examination undermines the conspiracy evidence, as Kerr's veracity was a question for the trier of fact.

{¶ 11} Nor do we agree with appellant's next argument. Appellant contends that because the trial court dismissed the murder-for-hire specification, the state could not have demonstrated the existence of a conspiracy. Conspiracy, however, is not the equivalent of murder for hire. Rather, under R.C. 2929.04(A)(2), murder for hire requires proof of an additional element not contained in the offense of conspiracy, specifically, that the murder "was

4

committed for hire." Because the state failed to present any evidence of compensation, the murder-for-hire specification was dismissed. But, as set forth in the statute, a conspiracy may exist without regard to whether remuneration is offered. Accordingly, a lack of evidence as to compensation has no bearing on the existence of the conspiracy. Appellant's argument is therefore without merit.

{¶ 12} Appellant next contends that the trial court erred in allowing the testimony of witness Kenny Swinford. Appellant disagrees with the admission of Swinford's statement that he participated in a conversation with Joy Hoop, Kathy Kerr, and a third person whose identity he did not know. Appellant contends that because Swinford never identified appellant as the unknown man, his testimony about that conversation was inadmissible. Similarly, appellant argues that Swinford improperly testified to what "they" were saying without identifying the individuals speaking.

{¶ 13} Appellant, however, failed to object on either of these grounds at trial and therefore waived all but plain error. See *State v. Slagle* (1992), 65 Ohio St.3d 597, 604, 605 N.E.2d 916, 925. Plain error consists of an obvious error or defect in the trial proceedings that affects a substantial right. Crim.R. 52(B). Under this standard, reversal is warranted only if the outcome of the trial clearly would have been different absent the error. *State v. Long* (1978), 53 Ohio St.2d 91, 7 O.O.3d 178, 372 N.E.2d 804, paragraph two of the syllabus. Upon review of Swinford's testimony in the plain error context, we are unpersuaded that the outcome would have been different had Swinford not testified. Accordingly, appellant's thirteenth proposition of law is overruled.

B. Sufficiency of the Evidence

{¶ 14} Appellant argues in his fourteenth proposition that the evidence presented at trial was legally insufficient to support his conviction of aggravated murder. The relevant question in determining the sufficiency of the evidence is whether, "after viewing the evidence in the light most favorable to the prosecution,

any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." (Emphasis deleted.) *Jackson v. Virginia* (1979), 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573.

{¶ 15} Appellant insists that the state failed to prove that he acted with purpose to kill under R.C. 2903.01. Viewing the evidence in the light most favorable to the prosecution, we are convinced that it is sufficient to support that element of the offense. Witnesses testified that after Joy said she wanted Whitey dead, appellant said he would "take care of it" or "do him in." Furthermore, Whitey was shot twice in the head at close range, the second time while he was lying on the ground. As we have repeatedly held, multiple gunshots to a vital area at close range tend to demonstrate purpose to kill. See *State v. Palmer* (1997), 80 Ohio St.3d 543, 562, 687 N.E.2d 685, 702; *State v. Otte* (1996), 74 Ohio St.3d 555, 564, 660 N.E.2d 711, 720. This evidence, taken together, is sufficient to demonstrate appellant's purpose to murder Whitey Hoop.

{¶ 16} We similarly reject appellant's second argument, that the state failed to prove appellant's identity as the murderer. Appellant was heard to say he would do Whitey in and was caught right after the shooting in Kerr's bathroom soaking his bloodstained clothes in her tub. Police also discovered in the bathroom Whitey's wallet and a Jennings .22 with a bloodstain on it consistent with Whitey's blood. Lindsey's clothing and truck were also heavily stained with blood consistent with Whitey's blood. Viewing this evidence in a light most favorable to the prosecution, we are convinced that any rational trier of fact could have found beyond a reasonable doubt that appellant committed the aggravated murder. Appellant's fourteenth proposition of law is overruled.

C.  Manifest Weight

{¶ 17} Appellant's fifteenth proposition of law challenges his conviction for aggravated murder as against the manifest weight of the evidence.  In considering a manifest-weight claim, " '[t]he court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.  The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against conviction.' " *State v. Thompkins* (1997), 78 Ohio St.3d 380, 387, 678 N.E.2d 541, 547, quoting *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 219, 485 N.E.2d 717, 720-721.

{¶ 18} Appellant contends that circumstantial evidence pointed to suspects other than himself and that such evidence outweighed the state's evidence as to appellant's identity.  In particular, appellant focuses upon Deputy Sheriff Moore's supposed testimony that an unidentified vehicle was seen leaving the parking lot of Slammers at high speed.  In fact, Moore testified only that a vehicle was seen driving at a high speed past him as he returned to the bar, not that it left from Slammers.  Appellant also points to the fact that Swinford claimed he left the bar before the shooting but that no one saw him drive away and that no gunshot residue tests were taken from Swinford.  Finally he emphasizes that Kathy Kerr was seen to have blood on her but that police failed to sample it.

{¶ 19} This evidence by itself  is weak and cannot be said to implicate any of the above as the murderer.  Moreover, considered in the context of the remaining identity evidence, this case most definitely does not fall into the category of the "exceptional case in which the evidence weighs heavily against the conviction." *State v. Thompkins, supra*, 78 Ohio St.3d at 387, 678 N.E.2d at 547.  Rather, the evidence shows that appellant stated he would kill Whitey, that he was seen

standing near his dead body, that police found him shortly after the shooting soaking his bloodstained clothing in a bathroom that also contained Whitey's wallet and the same type of gun that killed Whitey, and that his truck was heavily stained with blood consistent with Whitey's. This evidence persuades us that the jury neither lost its way nor created a manifest miscarriage of justice in convicting appellant of aggravated murder. Appellant's fifteenth proposition of law is overruled.

## II.  Penalty-Phase Issues

### A.  Hearsay

{¶ 20} In his fourth proposition of law, appellant challenges the trial court's exclusion of a statement made by appellant's wife. During that portion of her testimony, appellant's wife was discussing appellant's disappointment with himself about his substance-abuse problem. When asked how she knew he was disappointed, she responded: "Because he said that he did not like himself like that." The trial court sustained the state's objection to this statement without providing a basis for the exclusion, but both parties assume it was on hearsay grounds.

{¶ 21} Appellant argues that this information was crucial to his defense and therefore it was error to exclude it. Even assuming that the exclusion was error, however, it was harmless. Appellant's wife had already testified that appellant "was disappointed in himself" when he resumed his substance abuse. The further statement that he "said that he did not like himself like that" was cumulative and added nothing additional to the defense's point. Appellant's fourth proposition of law is overruled.

### B.  Guilt-Phase Evidence

{¶ 22} In his sixth proposition of law, appellant takes issue with the trial court's admission of all the guilt-phase evidence into the penalty phase of the

proceedings. Specifically in contention is the trial court's failure to determine which of the guilt-phase evidence was relevant to the penalty phase. Instead of making that determination, the court instructed the jury to consider only that evidence relevant to the specific aggravating circumstance at issue.

{¶ 23} While R.C. 2929.03(D)(1) permits the reintroduction of much or all of the guilt-phase evidence during the penalty phase, it does not relieve the trial court of its duty to determine the evidence relevant for consideration. See *State v. Getsy* (1998), 84 Ohio St.3d 180, 201, 702 N.E.2d 866, 887. In *Getsy,* we held that the trial court's admission of all the evidence from the trial phase — with an instruction to the jury to consider "all the evidence, including exhibits presented in the first phase of this trial which you deem to be relevant" — was error. *Id.* As we explained there, it is the trial court's responsibility, during the penalty phase, to identify and admit only the evidence relevant to that phase. Under the same reasoning, the trial court's admission here of all the guilt-phase evidence with a similar instruction to the jury was also error. In so doing, the trial court improperly delegated to the jury the court's duty to determine the evidence relevant to the penalty phase.

{¶ 24} As in *Getsy,* however, the admission of the specific evidence challenged as prejudicial and irrelevant did not prejudice the outcome of the trial. Here, appellant points to bloody photographs of the victim, the bloodstains in appellant's vehicle, and the bloodstains on the premises of Slammer's bar as irrelevant and prejudicial to appellant. These items, however, were relevant to the aggravated robbery, the aggravating circumstance of which appellant was found guilty, as they demonstrated the element of serious physical harm to the victim. R.C. 2911.01(A)(3), R.C. 2929.03(D)(1). While the trial court should have exercised its responsibility to determine the relevance of the evidence admitted, the evidence contested was neither irrelevant nor prejudicial to the penalty phase. Accordingly, we overrule appellant's sixth proposition of law.

C.  Prosecutor's Misconduct

**{¶ 25}** Appellant's first proposition of law concerns the prosecutor's conduct in the penalty phase of the trial.   Appellant challenges the following statements made by the prosecutor:

(1)  "I guess that they said he grew up in a bad home, although it improved with his grandparents; he was gone from the home for a period of time; and he has an alcohol problem. *Do they outweigh what he did*?"  (Emphasis added.)

(2)  "We have Al Nehus here.  I'm not sure what he said other than he's been a good prisoner.  I don't see how that in any way mitigates *what he's done in this case, how that mitigates murdering somebody coldbloodedly in the course of a robbery, and that's what this is about.*"  (Emphasis added.)

(3)  "There is nothing that has been presented to you that *outweighs what he did to Whitey Hoop, nothing.  * * * [T]he circumstances of the offense itself outweigh those mitigating factors that have been presented here today.*"  (Emphasis added.)

(4)  "[W]hat you have to go back and decide is whether the Defendant's having taken a gun during the course of a robbery, held it to Mr. Hoop's face, pulled the trigger once, struggled with him, taking his wallet, and then place that gun to his forehead an eighth of an inch away or closer and pulled that trigger ending his life, whether that outweighs the fact that he didn't come from a perfect home. That's the issue which you have to decide."

**{¶ 26}** As appellant argues, portions of the above comments improperly suggested that the nature and circumstances of the offense were to be viewed by the jury as aggravating circumstances.  R.C. 2929.04(B) allows the nature and circumstances of the offense to be involved in the weighing of aggravating circumstances against mitigating factors only on the side of mitigation.  *State v. Wogenstahl* (1996), 75 Ohio St.3d 344, 356, 662 N.E.2d 311, 322.  As we explained in *Wogenstahl*, "the 'aggravating circumstances' against which the mitigating

evidence is to be weighed are limited to the specifications of aggravating circumstances set forth in R.C. 2929.04(A)(1) through (8) that have been alleged in the indictment and proved beyond a reasonable doubt." "[I]t is improper for prosecutors in the penalty phase of a capital trial to make any comment before a jury that the nature and circumstances of the offense are 'aggravating circumstances.' " *Id.*

{¶ 27} Appellant, however, failed to object to the prosecutor's comments at the time they were made. Accordingly, appellant waived any error except to the extent it constitutes plain error. Viewed in this context, the prosecutor's remarks did not alter the outcome of the trial and therefore did not rise to the level of plain error.

{¶ 28} Nor do we believe that the prosecutor's misstatement of the burden of proof in the weighing process constituted plain error. The prosecutor did ask whether the mitigating factors outweighed what appellant did, improperly suggesting that the defense had the burden of showing that mitigating factors outweighed the aggravating circumstances. See *State v. Bey* (1999), 85 Ohio St.3d 487, 495-496, 709 N.E.2d 484, 494. But this misstatement occurred only twice in the context of various other times throughout his argument where he presented the correct standard.

{¶ 29} Furthermore, the trial court correctly instructed the jury on both of these issues. As a result, any confusion caused by the prosecutor's misstatements was cured. See *id.* Appellant's first proposition of law is overruled.

D. Jury Instructions

{¶ 30} In his third proposition of law, appellant argues that the trial court improperly instructed the jury to consider and reject the death sentence before considering any of the life-sentencing options. Specifically, the trial court instructed the jury that if it unanimously found that the aggravating circumstances outweighed the mitigating factors, it must recommend death. "On the other hand,

if * * * you find that the State of Ohio failed to prove that the aggravating circumstance which the Defendant, Carl G. Lindsey, was found guilty of committing outweighs the mitigating factors by proof beyond a reasonable doubt, then you will return a verdict reflecting this decision. In this event you will determine which of three possible life sentences to recommend to the Court."

{¶ 31} During deliberations the jury asked the court: "If we cannot reach a unanimous decision on the death penalty based on the mitigating factors versus the aggravating circumstances, what are our options?" The trial court responded: "[A]ny verdict which you return must be unanimous. And let me give you this further instruction. If you cannot unanimously agree on a death sentence, that you are at such time to move on in your deliberations to a consideration of which life sentence is appropriate * * * ."

{¶ 32} Appellant argues that the above instructions were erroneous because they suggested that the jury was to consider the life-versus-death issue first before considering other sentencing options. However, this is precisely the procedure required by the statute. Under R.C. 2929.03(D)(2), the jury must "determine whether the aggravating circumstances the offender was found guilty of committing outweigh the mitigating factors present in the case. If the trial jury unanimously finds, by proof beyond a reasonable doubt, that the aggravating circumstances * * * outweigh the mitigating factors, the trial jury shall recommend to the court that the sentence of death be imposed on the offender." As we stated in *State v. Brooks* (1996), 75 Ohio St.3d 148, 162, 661 N.E.2d 1030, 1042, the statute requires the jury to consider the death issue first and "when it cannot unanimously agree on a death sentence, to move on in their deliberations to a consideration of which life sentence is appropriate." Accordingly, we reject appellant's argument that a death-first instruction constitutes error.

{¶ 33} Nor do we agree with appellant that the trial court's instruction was similar to the instruction given in *State v. Brooks* and therefore erroneous. In

*Brooks*, the trial court improperly instructed that the jury must *unanimously reject* the death penalty before it could consider other sentencing options. As we explained there, the statute requires unanimity to *impose* the death sentence, not to *reject* it.

**{¶ 34}** Here, admittedly, the court was somewhat vague in its initial response to the jury's question concerning its sentencing options. The trial court's statement that "any verdict which you return must be unanimous" is unclear and could, by itself, be interpreted to require a unanimous rejection of the death sentence. However, the trial court immediately clarified its instruction by correctly stating that if the jury could not unanimously agree on a death sentence, it should move on to consider the life sentence options. Thus, the court clearly set forth the appropriate standard and eliminated any confusion caused by its initial instruction. Appellant's third proposition of law is overruled.

**{¶ 35}** Appellant's fifth proposition of law also challenges the trial court's instructions to the jury. Specifically, appellant argues that the court erred when it refused to provide further oral instruction to the jury upon request. During deliberations, the jury asked, "When weighing the mitigating evidence versus the aggravating circumstances, what are the aggravating circumstances? Is it solely the aggravated robbery or the combination of the aggravated robbery and the aggravated murder?"

**{¶ 36}** Rather than instructing the jury orally on this point, the trial court referred the jury to the written instructions that contained the court's original instruction on that issue:

"It would be improper for you to weigh in this balance against the mitigating factors the aggravated murder itself as an aggravating circumstance. This is because the sentencing laws of Ohio have already incorporated consideration of the commission of the aggravated murder itself in setting the sentence now available to you. In other words, the sentences you are to consider have already been

increased beyond that which would have been imposed for the aggravated murder itself due to the presence of the aggravating circumstance in this case."

{¶ 37} Appellant contends that the trial court had a duty to reinstruct the jury based upon that question. However, as we held in *State v. Carter* (1995), 72 Ohio St.3d 545, 651 N.E.2d 965, paragraph one of the syllabus, "[w]here, during the course of its deliberations, a jury requests further instruction, or clarification of an instruction previously given, a trial court has discretion to determine its response to that request." In *Carter* we concluded that the trial court acted within the scope of its discretion when it referred the jury to a written copy of the instructions rather than giving further oral instructions. *Id*. at 553, 651 N.E.2d at 974.

{¶ 38} The same conclusion is warranted here. The trial judge referred the jury to the written instructions, which clearly and comprehensively answered the question. Even appellant admits that this instruction was a good statement of the law. Accordingly, the trial court's decision to refer the jury to that instruction rather than giving further oral instruction was appropriate and within the scope of its discretion. Appellant's fifth proposition of law is overruled.

E. Sentencing Opinion

{¶ 39} In his eighth and ninth propositions, Lindsey contends that the nature and circumstances of the offense were improperly considered as nonstatutory aggravating circumstances. Lindsey argues that because the trial court's opinion included details concerning the crime, the court necessarily considered the nature and circumstances of the case as aggravating circumstances.

{¶ 40} A review of the sentencing opinion, however, provides no support whatsoever for appellant's position. Rather, the trial court's opinion reflects precisely the process mandated by statute. The trial court considered carefully and in substantial detail every portion of the mitigating evidence presented by appellant. It explained which factors were due more weight and which were due less, and concluded in sum that the mitigating factors were weak. The court then clearly and

properly weighed the sole aggravating circumstance—the aggravated robbery—against the mitigating factors.  At no point did it include any consideration of the nature and circumstances of the offense as aggravating circumstances.  Consequently, we find no merit to appellant's claim, and we overrule appellant's eighth and ninth assignments of error.

### III.  Ineffective Assistance of Counsel

{¶ 41} Appellant's twelfth proposition of law states that he received ineffective assistance of trial counsel at several times throughout the trial.  Appellant first asserts that his counsel was ineffective by "failing to voir dire, attempt to rehabilitate, or object to the dismissal of jurors who did not support the death penalty."  Appellant focuses upon fifteen jurors who were dismissed for cause after expressing reservations in varying degree about imposing the death penalty.  Appellant argues that trial counsel had a duty to attempt to rehabilitate these jurors and was ineffective by failing to do so.

{¶ 42} Reversal of a conviction on the grounds of ineffective assistance of counsel requires a showing, first, that counsel's performance was deficient and, second, that the deficient performance prejudiced the defense so as to deprive defendant of a fair trial.  *Strickland  v. Washington* (1984), 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693.  We have previously held that counsel's failure to rehabilitate jurors does not render trial counsel ineffective, as counsel is in a better position to determine whether the jurors merited in-depth examination.  *State v. Phillips* (1995), 74 Ohio St.3d 72, 85, 656 N.E.2d 643, 658-659.  Because voir dire is largely a matter of strategy and tactics, "[t]he reason for excusing these prospective jurors may have been readily apparent to those viewing the jurors as they answered the question." *State v. Keith* (1997), 79 Ohio St.3d 514, 521, 684 N.E.2d 47, 57.

{¶ 43} Employing this rationale, we decline to substitute our judgment for that of trial counsel, and we hold that counsel was not deficient in failing to attempt

to rehabilitate the fifteen prospective jurors. Trial counsel was present and witnessed the demeanor and statements of these jurors. Based upon these observations, counsel may have had strategic reasons for acting as he did. Moreover, even if we were to find that the asserted deficiency existed, we see no basis for holding that appellant was prejudiced by counsel's performance. To demonstrate prejudice, appellant must show that a reasonable probability exists that, were it not for counsel's errors, the result of the trial would have been different. *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373, paragraph three of the syllabus. We do not believe that trial counsel's failure to rehabilitate the prospective jurors altered the outcome of the trial, since we find no evidence in the record that the seated jurors were unable to follow their oaths and to make a recommendation of death only when permitted by law and warranted by the facts. See *State v. Keith*, 79 Ohio St.3d at 522, 684 N.E.2d at 57.

**{¶ 44}** Appellant next urges that counsel was ineffective for "failing to explore jurors' demonstrated bias & prejudice and to attempt to strike those jurors." Appellant contends that eight prospective jurors made statements during voir dire indicating bias or prejudice against him and that his counsel should have attempted to have these jurors removed for cause. Upon consideration of the statements made by these jurors, we disagree.

**{¶ 45}** We first address the alleged bias of jurors Pride, Gee, and Hile. Each of these prospective jurors initially indicated some misunderstanding of the law on either defendant's failure to testify or when capital punishment is appropriate under Ohio law. But in each instance, after listening to the trial court's explanation of the law on the point at issue, the jurors stated in some form or another that they could accept the court's explanation, could set aside the previous belief, or would consider the appropriate law. Given that the jurors indicated that they could follow the law as presented by the trial court, we are not persuaded that they evinced enmity or bias toward the defendant. Accordingly, there was no basis upon which

to excuse them for cause, and trial counsel was not ineffective in failing to pursue that course of action.

{¶ 46} Nor are we persuaded that the views of prospective jurors Yeary, Osborne, and Helbling demonstrated either bias or prejudice. Yeary simply left the question of defendant's failure to testify blank on his questionnaire, but stated that he could draw no inference from the defendant's refusal to testify and could follow an instruction to that effect; Osborne stated he would have to take a hard look at evidence of psychology or psychiatry in this case; and Helbling stated that he felt that police officers cannot do their jobs without worrying about a loophole that would affect the case. Because these statements do not necessarily reflect bias against appellant, we are unwilling to hold trial counsel deficient in also reaching that conclusion.

{¶ 47} Turning now to the remaining two prospective jurors, we note that both individuals were removed by means of peremptory challenges and therefore were not seated. It is appellant's position that, had counsel removed these jurors for cause, the peremptory challenges could have been used on other jurors. As set forth above, however, the jurors who were seated exhibited neither prejudice nor bias and therefore it was unnecessary to excuse them. Thus, even if appellant's use of his peremptory challenges on these jurors was deficient, it had no effect on the outcome of the case. Because the seated jurors were neither biased nor prejudiced, their removal was unnecessary.

{¶ 48} Finally, appellant argues that trial counsel was ineffective for failing to object to the court's refusal to orally answer the jury's question concerning aggravating circumstances. As set forth above, however, the trial court's response to that question, referring the jury to clear and complete written instructions on the issue, was appropriate. Because the court's action did not constitute error, trial counsel's failure to object cannot be considered deficient. Appellant's twelfth assignment of error is overruled.

IV. Independent Sentence Review

{¶ 49} In his seventh proposition of law, appellant argues that the state failed to establish beyond a reasonable doubt that the aggravating circumstance outweighed the mitigating factors. As more fully set forth below, we conclude that the aggravating circumstance of aggravated robbery conclusively outweighed the mitigating factors.

{¶ 50} Pursuant to R.C. 2929.05, we are obligated to independently weigh the aggravating circumstance against the mitigating factors and to determine whether appellant's sentence is disproportionate to sentences in similar cases. We begin this review, as required by R.C. 2929.05(A), with a consideration of whether the evidence supports a finding of the aggravating circumstance, specifically, that the aggravated murder was committed by appellant while committing, attempting to commit, or fleeing immediately after committing or attempting to commit the offense of aggravated robbery, and that appellant was the principal offender in the commission of the aggravated murder.

{¶ 51} As set forth above in our review of the sufficiency of the evidence, the state presented sufficient evidence to prove beyond a reasonable doubt that appellant committed the murder of Whitey Hoop. Upon further consideration of the record, we also conclude that the evidence supports the commission of aggravated robbery during that murder. Shortly after the shooting, police located appellant in Kathy Kerr's bathroom with Whitey's empty wallet discarded in the wastebasket. At that time, appellant's own wallet contained approximately $1,300 in cash, although appellant had recently been laid off from seasonal employment. Also, a witness testified that Whitey routinely carried about $1,000 in cash. This evidence persuades us that the aggravating circumstance was proven beyond a reasonable doubt.

{¶ 52} Having so determined, we turn now to consideration of the mitigating factors. Appellant presented the testimony of four mitigation witnesses.

18

He called Sgt. Richard Nehus, a jailer at the county adult detention center, who stated that appellant had been a good inmate, describing him as above average and noting that he watched out for another inmate. Appellant also presented the testimony of his wife, Pam Lindsey, who testified that appellant was an alcohol and drug abuser and may have been under the influence of drugs on the night of the murder. She further testified that he had tried to stop his substance abuse several times over the years. She also stated that he was kind to her daughter and granddaughter.

**{¶ 53}** Appellant further called as witnesses his sisters Elizabeth Castle and Stella Collins, who testified that appellant suffered an abusive childhood. In particular, they testified that their parents were alcoholics who fought constantly and who at some point dropped the children off to live with their grandparents. While conditions were apparently better for the children with their grandparents, the sisters testified that their grandfather was also an alcoholic, who may have been violent toward appellant.

**{¶ 54}** Appellant presented no other mitigating evidence. Nor can we find any mitigating value in the nature and circumstances of the offense, as there can be nothing mitigating about volunteering to murder someone's husband, shooting the victim twice in the head at close range, and taking his wallet. While we afford the mitigating factors what weight they are due, overall we consider them of minimal significance to our weighing process. Consequently, we conclude that the mitigating factors are substantially outweighed by the aggravating circumstance.

**{¶ 55}** We also conclude that the penalty imposed is proportionate when compared with capital cases involving similar circumstances. This court has often upheld death sentences in situations involving aggravated murder committed during aggravated robbery. See, *e.g.*, *State v. Benge* (1996), 75 Ohio St.3d 136, 146-147, 661 N.E.2d 1019, 1029; *State v. Allen* (1995), 73 Ohio St.3d 626, 643-644, 653 N.E.2d 675, 690-691; *State v. Carter* (1995), 72 Ohio St.3d 545, 561-563,

651 N.E.2d 965, 979-980. Accordingly, we affirm appellant's convictions and sentence.

*Judgment affirmed.*

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY, PFEIFER and LUNDBERG STRATTON, JJ., concur.

_____

APPENDIX

{¶ 56} *Proposition of Law No. 1:* Egregious misconduct by the prosecutor in the penalty phase of capital proceedings requires reversal of the death sentence, and where the prosecutor's final argument for death argues nonstatutory aggravating factors, a death sentence based on a jury verdict following such arguments violates due process and the Eighth Amendment of the Unite[d] States Constitution, and their counterparts in the Ohio Constitution.

{¶ 57} *Proposition of Law No. 2:* The Ohio death penalty statutes are unconstitutional, violating the Eighth Amendment proscription of cruel and unusual punishments, the Fourteenth Amendment guarantees to due process of law and to the equal protection of the laws, and also violating the concomitant provisions of the Ohio Constitution.

{¶ 58} *Proposition of Law No. 3:* A jury deliberating with respect to the sentence in a capital trial may not be instructed that it must consider and reject the sentence of death before considering any of the life sentencing options; where the jury is so instructed, the resulting death sentence violates the Eighth Amendment and Art. I, Sec. 9 of the Ohio Constitution, and must be reversed.

{¶ 59} *Proposition of Law No. 4:* At the penalty phase of an aggravated murder prosecution, the trial court is required to extend considerable latitude to the defense in the admission of evidence with respect to mitigation of the death penalty, and where the trial court excludes relevant, probative evidence of mitigation, by

granting an objection by the prosecutor, the right of the accused to due process of law under the Fourteenth Amendment, and to be free from cruel and unusual punishment under the Eighth Amendment, and under Art. I, Secs. 9 and 16, O. Const., have been violated, the death sentence imposed is unlawful and unconstitutional, and must be reversed, and the accused re-sentenced to life imprisonment.

{¶ 60} *Proposition of Law No. 5:* The killing itself is not an aggravating circumstance, and where, at the penalty phase of a capital trial, the prosecution argues that the accused deserves to die because of what he did to the victim, the trial court refuses to answer the question from the deliberating jury as to whether the killing is an aggravating circumstance, the death sentence imposed must be reversed as violative of the Eighth Amendment, even where the trial court had previously instructed, and defense counsel had previously argued, that the killing was not an aggravating circumstance, and must not be weighed in the sentencing calculus.

{¶ 61} *Proposition of Law No. 6:* Only evidence relevant to the issues at the penalty phase of capital proceedings is admissible, and it is prejudicial error violative of the Eighth Amendment for the trial court to permit the prosecution to introduce all evidence adduced at the guilty/innocence phase of the proceedings, even where the trial court admonishes the jury that only evidence relevant to the sentencing process is to be considered by the jury.

{¶ 62} *Proposition of Law No. 7:* Where the state fails to establish beyond a reasonable doubt that the aggravation outweighs mitigation beyond a reasonable doubt, the death penalty is absolutely precluded, and the imposition of the death sentence under such circumstances constitutes a violation of the offender's constitutional right to be free of cruel and unusual punishment and also his right to due process of law.

{¶ 63} *Proposition of Law No. 8:* The Eighth Amendment requirement of

reliability in capital sentencing is violated where the sentencing opinion of the trial court fails to state the reasons why aggravation outweighs mitigation, and to refrain from reliance upon the nature and circumstances of the offense as an aggravating circumstance.

{¶ 64} *Proposition of Law No. 9*: It is impermissible for a sentencer in a capital case to weigh the nature and circumstances of the offense as an aggravating circumstance, where a trial court considers, and weighs, such improper aggravator [*sic*], the death sentence imposed violates the offender's constitutional rights under the Eighth and Fourteenth Amendments to the U.S. Constitution, and Art. I, Secs. 9 and 16 of the Ohio Constitution, and must be reversed.

{¶ 65} *Proposition of Law No. 10:* It is impermissible under the Eighth and Fourteenth Amendments to the U.S. Constitution and Art. I, Secs. 9 and 16 of the Ohio Constitution for the jury to be informed that a death verdict is merely a recommendation, which instruction impermissibly attenuates the jury's sense of responsibility for its decision.

{¶ 66} *Proposition of Law No. 11:* The increased need for reliability required in capital cases by the Ohio and Federal Constitutions mandates the granting to the defense more than six peremptory challenges.

{¶ 67} *Proposition of Law No. 12:* Where the defendant in a capital murder trial is deprived of the effective assistance of counsel, his conviction and death sentence offend the Sixth, Eighth, and Fourteenth Amendments to the United States Constitution, and their counterparts in the Ohio Constitution, and must be reversed, and a new trial granted.

{¶ 68} *Proposition of Law No. 13:* Where the state fails to meet the requirements of Evidence Rule 801(D)(2)(e) for the introduction of statements of a co-conspirator, the court errs in allowing those statements into evidence.

{¶ 69} *Proposition of Law No. 14:* Where the state fails to prove beyond a reasonable doubt the essential elements of purpose to kill, convictions for

aggravated murder must be reversed as contrary to the right of the accused to due process of law under the Ohio and Federal Constitutions.

{¶ 70} *Proposition of Law No. 15*: Convictions for aggravated murder which are contrary to the manifest weight of the evidence must be reversed, as contrary to the right of the accused to due process of law under the Ohio and Federal Constitutions.