JOURNAL ENTRY AND OPINION
{¶ 1} Douglas Waldron ("Waldron") appeals his conviction and sentence from Cuyahoga County Common Pleas Court. Waldron argues that his trial counsel rendered ineffective assistance, that the jury verdicts were against the manifest weight of the evidence, and that his sentence was contrary to law. For the following reasons, we affirm Waldron's conviction, vacate the imposed sentence, and remand for resentencing.
 {¶ 2} In 1997, twelve-year-old victim E.L.[1] lived with his family on the near west side of Cleveland. Waldron lived in the same neighborhood as E.L. and had even taken the child to a Cavaliers game on a prior occasion. E.L. admitted that he knew Waldron was a homosexual, and further admitted that he had heard rumors that Waldron engaged in sexual activity with other boys in the neighborhood.
 {¶ 3} In November, 1997, Waldron approached E.L. and friend D.W. outside of a corner store. Waldron offered E.L. money in exchange for allowing Waldron to perform fellatio on E.L.E.L. agreed to Waldron's proposition and he and D.W. followed Waldron to his one-bedroom apartment.
 {¶ 4} Once inside the apartment, D.W. sat on a chair, E.L. sat on the bed, and Waldron sat on the floor in front of E.L. Waldron told E.L. to pull down his pants and underwear and E.L. complied, pulling his pants and underwear to his knees. Waldron proceeded to perform fellatio on E.L. while masturbating. After Waldron finished, he asked D.W. if he was next, and D.W. responded in the negative. Waldron gave D.W. five dollars and gave E.L. either forty or sixty dollars. Both boys then left the apartment.
 {¶ 5} E.L. admitted that he returned to Waldron's apartment a second time in November. Once inside the apartment, Waldron told E.L., "I'll give you seventy-five dollars if you let me do it again." Waldron also told E.L. that he didn't have the money at the present time, that E.L. would have to wait until Waldron received his paycheck. E.L. agreed, and allowed Waldron to perform fellatio on him for the second time. Waldron later paid E.L. seventy-five dollars.
 {¶ 6} D.W., who was not present for the second incident, stated that he observed E.L. on the street with some money, and that E.L. said he received the money from Waldron.
 {¶ 7} In late November, Waldron approached B.F. and K.F., two brothers who were twelve and fourteen years of age. Waldron handed each brother a scrap of paper with his name, address, and phone number and asked each brother if they wanted to make any money. Both B.F. and K.F. testified that they recognized Waldron's name, and further stated that they had heard about the sexual encounter between Waldron and E.L. The brothers returned home and informed their grandmother about the encounter. The grandmother contacted the police, who responded to the residence. After speaking with the brothers and their grandmother, officers learned that Waldron had engaged in sexual contact with E.L.
 {¶ 8} When officers first interviewed E.L about the alleged incident, E.L. initially denied any sexual contact. However, after police reinterviewed B.F., K.F, and interviewed D.W., E.L. told police about Waldron's actions. Officers then responded to Waldron's residence and placed him under arrest.
 {¶ 9} A Cuyahoga County Grand Jury indicted Waldron with two counts of rape and two counts of compelling prostitution. Both rape charges contained sexually violent predator specifications and repeat violent offender specifications. The trial court severed the specifications from the main counts of the indictment and Waldron waived his right to a jury trial on those specifications. After deliberating, the jury found Waldron guilty of all four charges. The trial court then held a hearing on the specifications and found Waldron guilty of the repeat violent offender specifications and adjudged him to be a sexually violent predator. The trial court sentenced Waldron to a maximum sentence of ten years on each rape count, with an additional nine-year sentence for the repeat violent offender specification, and seven years on each count of compelling prostitution. The trial court ordered all sentences to be served consecutively.
 {¶ 10} Waldron has filed this delayed appeal with this Court's permission, raising the five assignments of error contained in the appendix to this opinion.
 {¶ 11} In his first assignment of error, Waldron argues that his trial counsel rendered ineffective assistance when he failed to object to the admission of "other acts" evidence. Specifically, Waldron argues that the testimony of B.F. and K.F. constituted impermissible "other acts" evidence that had an impact on the outcome of his trial. We disagree.
 {¶ 12} In order to prevail on a claim for ineffective assistance of counsel, the defendant must show first, that counsel's performance was deficient, and second, that the deficient performance prejudiced the defense so as to deprive the defendant of a fair trial. Strickland v.Washington (1984), 466 U.S. 668, 687, 104 S.Ct. 2052; State v. Bradley
(1989), 42 Ohio St.3d 136. Counsel's performance may be found to be deficient if counsel "made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment." Strickland at 687. To establish prejudice, "the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different."Strickland at 687.
 {¶ 13} In determining whether counsel's performance fell below an objective standard of reasonableness, judicial scrutiny of counsel's performance must be highly deferential. Bradley, at 142. Because of the difficulties inherent in determining whether counsel rendered effective assistance in any given case, a strong presumption exists that counsel's conduct fell within the wide range of reasonable, professional assistance. Id.
 {¶ 14} The ultimate question under this assigned error is whether the testimony constituted impermissible "other acts" evidence and whether such testimony prejudiced the outcome of Waldron's trial. We find the testimony offered by B.F. and K.F. clearly admissible to establish a plan pursuant to Evid.R. 404(B). Evid.R. 404(B) permits the introduction of evidence of "other acts" to prove a plan so long as the evidence is not used merely to prove the bad character of the person and that he acted in conformity therewith.
 {¶ 15} In the present case, the evidence established that in November 1997, Waldron approached E.L. and D.W. and asked them if they wanted to make money. Waldron then paid E.L. a sum of money for allowing him to perform fellatio on E.L. The evidence further established that later on that month, Waldron approached B.F. and K.F. and asked them if they wanted to make some money. Both acts involved victims of the same or similar age, the same month, and the same approach. Accordingly, the "other act" and the crime committed against E.L. shared the common plan to engage in sexual contact with young boys.
 {¶ 16} Waldron's argument that the State of Ohio used this evidence to prove Waldron's bad character and that he acted in conformity therewith is without merit. The portions of the trial transcript cited to by Waldron in support of this argument involved the State of Ohio's closing arguments. The transcript reflects that the trial court clearly instructed the jury that closing arguments were not evidence to be considered during deliberation. Accordingly, Waldron did not suffer prejudice.
 {¶ 17} Because B.F. and K.F. testified to admissible "other acts" evidence, Waldron cannot show either that his counsel performed deficiently, or that such deficient performance prejudiced his defense, depriving him of a fair trial. Therefore, his trial counsel did not render ineffective assistance.
 {¶ 18} Waldron's first assignment of error is overruled.
 {¶ 19} In his second assignment of error, Waldron argues that the jury's guilty verdicts were against the manifest weight of the evidence. We disagree.
 {¶ 20} Because this assigned error deals only with the jury verdicts, we will not address the trial court's adjudication of Waldron as a repeat violent offender and a sexually violent predator.
 {¶ 21} In evaluating a challenge to the verdict based on manifest weight of the evidence, a court sits as the thirteenth juror, and intrudes its judgment into proceedings which it finds to be fatally flawed through misrepresentation or misapplication of the evidence by a jury which has "lost its way." State v. Thompkins, 78 Ohio St.3d 380,1997-Ohio-52. As the Ohio Supreme Court declared:
"Weight of the evidence concerns `the inclination of the greater amount of credible evidence offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief.'" Id. at 387, quoting Black's Law Dictionary (6 ED. 1990) 1594.
"* * * `The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.'" Thompkins, at 387. (Internal citations omitted.)
 {¶ 22} However, this court should be mindful that the weight of the evidence and the credibility of witnesses are matters primarily for the trier of fact, and a reviewing court must not reverse a verdict where the trier of fact could reasonably conclude from substantial evidence that the State has proven the offense beyond a reasonable doubt. State v.DeHass (1967), 10 Ohio St.2d 230, at paragraphs one and two of the syllabus. The goal of the reviewing court is to determine whether the new trial is mandated. A reviewing court should only grant a new trial in the "exceptional case in which the evidence weighs heavily against a conviction." State v. Lindsey, 87 Ohio St.3d 479, 483, 2000-Ohio-465. (Citation omitted.)
 {¶ 23} The jury found Waldron guilty of two counts of rape pursuant to R.C. 2907.02, which provides, "[n]o person shall engage in sexual conduct with another who is not the spouse of the offender * * * when * * * [t]he other person is less than thirteen years of age, whether or not the offender knows the age of the other person."
 {¶ 24} The jury also convicted Waldron of two counts of compelling prostitution pursuant to R.C. 2907.21, which provides that "[n]o person shall knowingly * * * [i]nduce, procure, encourage, solicit, request, or otherwise facilitate a minor to engage in sexual activity for hire, whether or not the offender knows the age of the minor."
 {¶ 25} In the present case, C.C., E.L.'s mother, testified that she gave birth to her son on May 26, 1985, and that he was twelve years old in November 1997. E.L. testified that although he could not remember the exact date, Waldron approached him and D.W. in November and asked if they wanted to make some money, that he and D.W. went to Waldron's apartment where he allowed Waldron to perform fellatio in exchange for money. E.L. further testified that while in Waldron's apartment for a second time in November, Waldron told him that he would pay E.L. seventy-five dollars if E.L. would allow Waldron to perform fellatio. D.W. testified that he witnessed the first sexual encounter between Waldron and E.L., and also learned from E.L. that he received money from Waldron after he went over to Waldron's apartment for a second time.
 {¶ 26} In response to this evidence, Waldron argues that the testimony supplied by E.L. and D.W. was not credible. Specifically, Waldron argues that E.L. and D.W. did not remember dates, E.L. did not remember the exact amount of money he received, E.L. initially denied that sexual contact took place when questioned by police, and, D.W. returned to Waldron's house several times after the alleged sexual contact took place. As stated above, the credibility of witnesses are matters primarily for the trier of fact, and a reviewing court must not reverse a verdict where the trier of fact could reasonably conclude from substantial evidence that the State has proven the offense beyond a reasonable doubt. DeHass, at paragraphs one and two of syllabus.
 {¶ 27} We find that in the present case, the trier of fact could reasonably conclude that the State has proven the offenses beyond a reasonable doubt. Moreover, we cannot say that the jury lost its way in finding Waldron guilty of rape pursuant to R.C. 2907.02, and compelling prostitution pursuant to R.C. 2907.21, as the greater amount of credible evidence supports all four convictions.
 {¶ 28} In his third assignment of error, Waldron argues that the trial court erred in sentencing him to seven years on each of the two counts of compelling prostitution. We agree.
 {¶ 29} Compelling prostitution, as it applies to Waldron's conviction, is a third degree felony that is only punishable by a one to-five year range of prison time. R.C. 2929.14(A)(3). Appellee concedes this fact, and also concedes that the trial court exceeded the statutorily prescribed maximum when it sentenced Waldron to seven years.
 {¶ 30} In his fourth assignment of error, Waldron argues that the trial court did not make the required findings when it imposed maximum, consecutive sentences. We agree.
 {¶ 31} The law in Ohio is clear, before a trial court can impose maximum, consecutive sentences, it must make the required findings pursuant to R.C. 2929.14(C), and 2929.14(E)(4). See, also, State v.Edmonson, 86 Ohio St.3d 324, 1999-Ohio-110. The trial court made none of the required findings and as such, Waldron's sentence is contrary to law.
 {¶ 32} Accordingly, Waldron's sentence is vacated and remanded to the trial court for resentencing.
 {¶ 33} Our decision on the third and fourth assignments of error renders Waldron's fifth assignment of error moot.
Conviction affirmed, sentence vacated and remanded for resentencing.
It is ordered that appellant recover of appellee costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Gallagher, P.J., and Rocco, J., concur.
 Appendix A
Assignments of Error
"I. Mr. Waldron's trial counsel was constitutionally ineffective for failing to object to the admission of prejudicial other-acts evidence at trial.
II. In violation of due process, the guilty verdicts were entered against the manifest weight of the evidence.
III. The trial court erred in sentencing Mr. Waldron to seven years on each of the two counts of compelling prostitution because the acts of which Mr. Waldron were convicted were third-degree felonies as defined under R.C. 2907.21(B).
IV. The trial court erred by imposing maximum, consecutive sentences on Mr. Waldron without making the findings required by R.C. 2828.14(B), 2929.14(C), and 2929.14(E) on the record.
V. The trial court erred by sentencing Mr. Waldron to maximum, consecutive prison terms for two rape counts based on facts not found by the jury or admitted by Mr. Waldron."
[1] This court protects the identity of all juvenile parties.