JOURNAL ENTRY AND OPINION
{¶ 1} Shaquille Azir ("Azir") appeals from his conviction on charges of theft, uttering, and tampering with records following a bench trial. He claims his conviction was against the manifest weight of the evidence. For the following reasons, we affirm the judgment of conviction.
 {¶ 2} The record reveals that Garner Henderson Sr., owned property located at 3265 East 126th Street in Cleveland. In 1970, Mr. Henderson quit-claimed the property to his sister Alice Johnson, n.k.a. Alice Eorle ("Alice"). Although she lived at the property for several years, Alice had no knowledge of this transfer and subsequently relocated to Tennessee.
 {¶ 3} When Mr. Henderson passed away in 1983, he left five surviving adult children: Samuel Henderson, Garner Henderson Jr., Carol Patterson Henderson, Charlie Henderson and Louis Henderson. Following the probate of their father's estate, the children believed that they owned the home in equal share, having received a Certificate of Transfer from Probate Court. See State's Exhibit 2. None of the Henderson children knew of the existence of the previously filed quit-claim deed to Alice.
 {¶ 4} Following the probate of the estate, Samuel Henderson ("Samuel") lived in the home for approximately seventeen years, apparently allowing the home to fall into a state of extreme disrepair. Sometime in 2001, however, Samuel spoke with Azir about a possible sale of the home. Azir and Samuel were relatives, as Azir's grandmother was married to Garner Henderson Sr. Azir and Samuel discussed the rehabilitation and sale of the East 126th Street home, with Azir providing any money necessary for the rehabilitation and repairs. No written agreement ever materialized, but Samuel believed that once the property was sold, he and his siblings would receive a share of any profits.
 {¶ 5} In line with this agreement and believing that each sibling owned a portion of the property, all five Henderson children executed a quit-claim deed to Azir so he could begin the necessary work. This deed was filed for record on January 16, 2001. A second quit-claim deed was produced during trial which purported to have all five Henderson children's signatures on the back. See State's Exhibit 4. However, Samuel Henderson and Louis Henderson reported that the signatures on the back were not theirs.
 {¶ 6} Azir began work on the home, but after money problems arose, he negotiated with Glen Hunter ("Hunter") for Hunter to purchase the home. Although Hunter maintains that he purchased the property for $11,000 plus the assumption of $3,599.02 in back taxes, on July 19, 2001, a warranty deed was filed whereby Azir granted Hunter the property for $50,000. See State's Exhibit 7. Curiously, shortly before the sale and on July 7, 2001, an additional quit-claim deed was executed whereby Alice Eorle and Carol Patterson Henderson quit-claimed any interest to Azir.[1] See State's Exhibit 5.
 {¶ 7} Having discovered the property transfer through another source, Samuel began making inquiries to determine why he had not received a share of this money.
 {¶ 8} On March 17, 2005, a Cuyahoga County Grand Jury returned an indictment charging Azir with the following counts: count one alleged forgery, in violation of R.C. 2913.31; count two alleged uttering, in violation of R.C. 2913.31; count three alleged tampering with records, in violation of R.C. 2913.42; count four alleged theft, in violation of R.C. 2913.02; count five alleged forgery; count six alleged uttering; count seven alleged tampering with records; count eight alleged theft, with an elderly specification; and count nine alleged theft.
 {¶ 9} On August 31, 2005, a bench trial was held and the trial court found Azir guilty of the two counts of uttering, two counts of tampering with records, and two counts of theft, including the theft charge that carried an elderly specification. The trial court sentenced Azir to six months on counts two, three, six and seven and twelve months on counts eight and nine, sentences to run concurrent. He appeals from this conviction in a single assignment of error which states:
"DEFENDANT-APPELLANT'S CONVICTIONS WERE CONTRARY TO THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 10} In evaluating a challenge to the verdict based on manifest weight of the evidence, a court sits as the thirteenth juror, and intrudes its judgment into proceedings which it finds to be fatally flawed through misrepresentation or misapplication of the evidence by a jury which has "lost its way." State v.Thompkins, 78 Ohio St.3d 380, 1997-Ohio-52. As the Ohio Supreme Court declared:
"Weight of the evidence concerns `the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief.' Id. at 387, quoting Black's Law Dictionary (6 Ed. 1990) 1594. * * * The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Thompkins, 78 Ohio St.3d at 387. (Internal citations omitted.)
 {¶ 11} However, this court should be mindful that the weight of the evidence and the credibility of witnesses are matters primarily for the trier of fact, and a reviewing court must not reverse a verdict where the trier of fact could reasonably conclude from substantial evidence that the State has proven the offense beyond a reasonable doubt. State v. DeHass (1967), 10 Ohio St.2d 230, at paragraphs one and two of the syllabus. The goal of the reviewing court is to determine whether the new trial is mandated. A reviewing court should only grant a new trial in the "exceptional case in which the evidence weighs heavily against a conviction." State v. Lindsey, 87 Ohio St.3d 479,483, 2000-Ohio-465.
 {¶ 12} The trial court convicted Azir of two counts of uttering, which pursuant to R.C. 2913.31 provides as follows:
"No person, with purpose to defraud, or knowing that the person is facilitating a fraud, * * * shall utter, or possess with purpose to utter, any writing that the person knows to have been forged."
 {¶ 13} The trial court also found Azir guilty of two counts of tampering with records, which pursuant to R.C. 2913.42
provides as follows:
"No person, knowing the person has no privilege to do so, and with purpose to defraud or knowing the person is facilitating a fraud, shall * * * falsify [or] * * * alter any writing * * * data, or record."
 {¶ 14} Lastly, the trial court found Azir guilty of theft with an elderly specification and theft, which pursuant to R.C.2913.02 and R.C. 2913.01(CC) provides as follows:
"No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over * * * the property * * * by deception."
"`Elderly person' means a person who is sixty-five years of age or older."
 {¶ 15} In support of its case, the State of Ohio ("State") presented the following evidence: Prior to the death of Garner Henderson Sr., he quit-claimed the deed to the property located at 3265 E. 126 Street to his sister, Alice Eorle; Alice was seventy-seven years old at the time of trial; a quit-claim deed displaying Alice Eorle's and Carol Patterson Henderson's signatures purporting to grant the entire interest in the property located at 3265 E. 126th Street to Azir; neither Alice nor any of the Henderson children signed this quit-claim deed executed on July 7, 2001; that this quit-claim deed, which was not signed by Alice nor any of the Henderson children, was filed for record with the Cuyahoga County Recorder on July 6, 2001; neither Samuel Henderson nor Louis Henderson signed the second quit-claim deed purporting to grant their interest in the property to Azir (State's exhibit 4); Azir knew that the property belonged to Alice, not the Henderson children; and Azir obtained ownership of the property and benefitted from his actions.
 {¶ 16} In response, Azir presented no witnesses and merely argues that the testimony used to support the State's case was not credible and not supported by expert testimony. However, the State elicited testimonial evidence from Samuel Henderson, Alice Eorle, and Louis Henderson that the signatures on the quit-claim deed were not theirs. The trier of fact is in the best position to weigh the evidence and the credibility of witnesses. As the reviewing court, we find that the trier of fact did not lose its way in convicting Azir of the above-listed charges. We conclude from the substantial evidence presented by the State, that the State proved each offense beyond a reasonable doubt. No manifest miscarriage of justice has occurred and, therefore, a new trial is not required.
 {¶ 17} Azir's sole assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
James J. Sweeney, P.J., and Patricia A. Blackmon, J., concur.
[1] Although this document is hand dated July 7, 2001, it was filed for record with the Cuyahoga County Recorder on July 6, 2001, as instrument number 200107060427.