JOURNAL ENTRY AND OPINION
Nathaniel Foster appeals from a judgment of the common pleas court entered pursuant to a jury verdict finding him guilty of kidnapping, felonious assault, aggravated robbery, and possession of criminal tools. On appeal, he urges that the trial court erred in admitting other act testimony and ineffective assistance of trial counsel for failing to object to that testimony; that his convictions are not supported by sufficient evidence; and that the court erroneously denied his request for an instruction on the lesser included offenses of abduction, aggravated assault, and robbery. After careful review, we reject these contentions and affirm the judgment of the trial court.
The record reveals that on November 9, 1998, Foster and Antoinette Jones, who had done drugs together on prior occasions, met on Decker Avenue, purchased a marijuana cigarette laced with cocaine, and smoked it in his Pontiac Grand Am.
Thereafter, they drove westbound on Interstate 90 in an attempt to purchase more drugs. They occasioned upon Jackie Schmikla, whose car had broke down on the freeway near the East 260th Street exit. Initially, Foster drove past her, but turned around, stopped his car, approached her, and asked if she needed assistance. He pushed her car to the side of the road and offered to drive her to a gas station. Noticing Jones in the car, Schmikla agreed to go with Foster in hopes of getting some assistance with her vehicle. When Foster drove past two gas stations, Schmikla began to fear for her life and screamed at him to let her out of the car. Foster left the freeway, pulled onto Stephen Avenue in Euclid, Ohio, stopped the car, and, according to Schmikla, told her, [t]his is the end of the road, bitch. Here's where you die. Foster then turned around to the backseat, struck her in the head with a padlock he held in his hand, and tried to take her purse. Jones, the front-seat passenger, opened the door, and Schmikla got out of the vehicle and ran. At that time, a struggle ensued with Foster slamming her head to the ground and Jones allegedly choking her. Foster grabbed her purse and ran back to his car. Schmikla ran after him and got into the car because her purse contained her home address, and she became concerned for the safety of her daughter. Foster tried to push Schmikla out of the car, slamming her left foot in the door, biting her, and attempting to burn her with a cigarette lighter. As a result, she had teeth marks and scarring on her left forearm.
Four residents of Stephen Avenue witnessed the incident and summoned the Euclid Police Department. Michael Cross, one of the residents, went outside and found keys and what he believed to be a belt in his neighbor's driveway. Jeffrey Spilar testified that he saw a women hanging out of a car screaming for help and also witnessed Jones beating Schmikla's head into the ground. Laura Abshire also testified that she witnessed three people fighting in a maroon-colored car and saw a female hanging out of the door as two people punched her. She called the police while her sister, Karen Abshire, remained outside and watched the assault until Foster drove off at a high rate of speed.
In response to the neighborhood calls, Officer Joseph Baglione responded to the scene, observed the struggle, and radioed for backup police assistance. While he waited, he saw the door of Foster's vehicle open, and Schmikla fell out of the car screaming to him that Foster and Jones had tried to kidnap her. The backup police units arrived and apprehended both Foster and Jones. Officer Baglione observed a bite mark on Schmikla's arm, retrieved her purse from Foster's vehicle and returned it to her. Officer James Savage testified that he observed a burn mark on her, and that he inventoried Foster's vehicle and recovered a disposable cigarette lighter.
Sergeant James Baird took pictures of Schmikla's injuries, and testified that he observed the bite mark on her left forearm, one on her right thigh, a large scrape on her left leg, a laceration on her foot, scratch marks on her neck and ear, and a bump on the left side of her head. The next day, Officer Russell Kucinski processed Foster's car at the impound lot and found a metal padlock.
Subsequently, the grand jury indicted Foster for kidnapping, felonious assault, aggravated robbery, and possession of criminal tools. At trial, the state presented its case-in-chief and eleven witnesses testified to the events surrounding that evening. After the state rested, the defense made a Crim.R. 29 motion for acquittal and alternatively requested jury instructions on the lesser included offenses of abduction, aggravated assault, and robbery. The defense then rested without presenting any witnesses, and the court denied Foster's motion for acquittal and denied the request for jury instructions on the lesser included offenses. Following deliberations, the jury found Foster guilty of all four counts and the specifications, as charged in the indictments; however, for the crime of felonious assault, the jury determined that Foster caused Schmikla physical harm, not serious physical harm.
Thereafter, the court imposed a ten-year sentence for kidnapping to run consecutively with a nine-year sentence for the repeat violent offender specification. Then the court sentenced Foster to concurrent terms of eight years for felonious assault consecutively with an additional nine years for the specification; ten years imprisonment for aggravated robbery and nine years for the specification; and twelve months imprisonment for possession of criminal tools, to run concurrently with each other but consecutively with the sentence for kidnapping. Foster now appeals his convictions and sentence and raises four assignments of error for our review. Because the first and second assignments of error concern other act testimony, they will considered together. They state:
 I. NATHANIEL FOSTER WAS DEPRIVED OF HIS RIGHT TO A FAIR TRIAL, BY THE ADMISSION OF IMPERMISSIBLE AND PREJUDICIAL OTHER ACTS EVIDENCE.
 II. NATHANIEL FOSTER WAS DENIED HIS CONSTITUTIONAL RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL, WHEN TRIAL COUNSEL FAILED TO OBJECT TO THE INTRODUCTION OF IMPROPER OTHER ACTS EVIDENCE.
Foster urges that when the trial court permitted Jones to testify about Foster smoking crack cocaine with her on prior occasions and on the night of the incident, it committed plain error and deprived him of both a fair trial, and the failure of his counsel to object to this testimony denied him effective assistance of counsel.
The state maintains that the testimony is admissible in accordance with Civ.R. 404(B) and R.C. 2945.59, that Foster waived any error by failing to object at trial, and that he has not demonstrated the outcome of the trial would have been any different had this portion of Jones' testimony not been admitted.
The issues here concern whether the court committed plain error by allowing this testimony and whether Foster received effective assistance of counsel.
Regarding the claim of error in admitting other act testimony, Civ.R. 404(B) states:
 Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
Further, R.C. 2945.59 provides:
 In any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing an act is material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant.
In State v. Thompson (1981), 66 Ohio St.2d 496, the court stated:
 "Other acts" testimony is relevant and, thus, admissible, under the "scheme, plan or system" exception of R.C. 2945.59 where those acts form part of the immediate background of the crime charged, and hence are "inextricably related" to the act alleged in the indictment; that is, where the challenged evidence plays an integral part in explaining the sequence of events and is necessary to give a complete picture of the alleged crime. * * *. "`The jury is entitled to know the "setting" of a case.'" (Citations omitted.)
In addition, we review this as a plain error analysis. In State v. Lindsey (2000), 87 Ohio St.3d 479, the court stated:
 Appellant, however, failed to object [witness testimony] * * * at trial and therefore waived all but plain error. * * *. Plain error consists of an obvious error or defect in the trial proceedings that affects a substantial right. * * *. Under this standard, reversal is warranted only if the outcome of the trial clearly would have been different absent the error. * * *.
In this case, Jones testified that she knew Foster because they had smoked cocaine together on two prior occasions. On November 9, 1998, they met on Decker Avenue, purchased a marijuana cigarette laced with cocaine, smoked it in Foster's car, and drove westbound on Interstate 90 attempting to purchase more drugs when they occasioned upon Schmikla. Foster regards this as other act testimony. However at trial, Foster did not object to the testimony about his prior drug use. Therefore, according to Lindsey, he waived all but plain error due to this failure. Thus, we consider whether this testimony affects a substantial right and changes the outcome of the trial. Here, the record contains the testimony of ten witnesses other than Jones, all of whom testified to the elements the state needed to prove to establish its case. This evidence established Foster's guilt and for these reasons, we cannot conclude that absent this testimony, the outcome of the trial would have been different. Finally, this testimony regarding Foster's drug use on the evening of November 9, 1998, explains his motive or intent in stopping to pick up Schmikla. We, therefore, have concluded that trial court committed no error in permitting Jones to testify as she did at trial.
Regarding Foster's claim that he had been denied effective assistance of counsel because no objection had been made to Jones' testimony. We recognize the court stated in Strickland v. Washington (1984), 466 U.S. 668:
 * * * First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.
The burden of showing deficient performance is a heavy one since counsel in Ohio are presumed competent. State v. Smith (1981), 3 Ohio App.3d 115. In evaluating defense counsel's performance, a reviewing court must accord deference to counsel's strategic choices from counsel's perspective at the time of trial, without the benefit of hindsight. Strickland, supra. In order to show prejudice, the defendant must show that a reasonable probability exists that, but for counsel's error, the result of the trial would have been different. State v. Bradley (1989), 42 Ohio St.3d 136, paragraph three of the syllabus.
In this case, eleven witnesses testified about the incident and Schmikla's injuries; four of them including Officer Baglione witnessed these events. Without knowing the specific trial strategy of defense counsel, we cannot say that evidence of the background information as to how Foster and Jones knew each other constituted prejudicial testimony or that the court should have excluded it. Here, in light of the evidence presented by Schmikla, Officer Baglione, and the four residents who witnessed the incident and who testified at trial, we are not persuaded that Foster has demonstrated that but for the admission of this testimony, the trial outcome would have been any different. Accordingly, these assignments of error are overruled.
 III. NATHANIEL FOSTER WAS DEPRIVED OF HIS LIBERTY WITHOUT DUE PROCESS OF LAW BY HIS CONVICTIONS FOR KIDNAP [SIC], AGGRAVATED ROBBERY AND FELONIOUS ASSAULT, AS THEY WERE NOT SUPPORTED BY SUFFICIENT EVIDENCE TO PROVE HIS GUILT BEYOND A REASONABLE DOUBT.
Foster claims the state failed to prove serious physical harm and urges that his convictions for kidnapping, felonious assault, and aggravated robbery should be reversed. The state maintains that it proved such harm beyond a reasonable doubt. Thus, the issue concerns whether Foster's convictions are supported by sufficient evidence.
The test for sufficiency of the evidence is enumerated in Crim.R. 29(A) which states in relevant part:
 The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses. * * *.
In addition, in State v. Martin (1983), 20 Ohio App.3d 172, the court addressed the question of the sufficiency of the evidence stating:
 * * * [T]he test is whether after viewing the probative evidence and inferences reasonably drawn therefrom in the light most favorable to the prosecution, any rational trier of fact could have found all the essential elements of the offense beyond a reasonable doubt. The claim of insufficient evidence invokes an inquiry about due process. It raises a question of law, the resolution of which does not allow the court to weigh the evidence. (Citations omitted.)
Regarding kidnapping, the state here assumed a burden to prove that Foster acted by deception to remove Schmikla from the place where she was found for the purpose of either terrorizing her or inflicting serious physical harm on her.
R.C. 2901.01(A)(5) defines serious physical harm as:
 * * * Any physical harm that carries a substantial risk of death;
 * * * that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity;
 * * * that involves some permanent disfigurement or that involves some temporary, serious disfigurement; * * *.
In this regard, the trial court properly instructed the jury on serious physical harm and defined the term terrorize as to impress with terror or fear or coerce by intimidation. However, in submitting the verdict form to the jury on this count, the printed finding for the jury inquired whether Foster caused Schmikla physical harm, not serious physical harm.
However, the court did instruct the jury on and defined terrorize for the jury. Here, the evidence shows Foster deceived Schmikla and removed her from her car on Interstate 90 to Stephen Avenue; in so doing, the evidence revealed that he drove past two gas stations, that Schmikla testified she became fearful and began to scream, and that Foster then drove to Stephen Avenue in Euclid, Ohio, where he allegedly told her she would die. This evidence, if believed by the jury, could be sufficient to support a conclusion that he acted in kidnapping her with a purpose to terrorize her. Certainly this is evidence of this criminal element, and this assignment of error is not well taken as to this offense.
Regarding felonious assault, the state assumed the burden to prove that Foster knowingly caused Schmikla serious physical harm or that he knowingly caused or attempted to cause physical harm by means of a deadly weapon.
In this case, the state offered evidence that Foster in his struggle with Schmikla bit her on the forearm leaving teeth marks and, as she testified at trial, a scar from that bite. As the definition of serious physical harm includes some permanent disfigurement or some temporary serious disfigurement, the state met its burden and, based on this evidence, the verdict of the jury is a proper one. Accordingly, this assignment of error is overruled as to this offense.
Regarding aggravated robbery, the state assumed the burden to prove that in committing a theft offense, Foster inflicted serious physical harm on her. We have previously concluded that the state met its burden to prove this element and, therefore, this assignment of error is not well taken as to this offense.
 IV. THE TRIAL COURT ERRED AND DENIED NATHANIEL FOSTER HIS CONSTITUTIONAL RIGHT TO A TRIAL BEFORE AN INFORMED JURY, WHEN IT REFUSED TO GIVE HIS REQUESTED JURY INSTRUCTIONS ON LESSER OFFENSES.
Foster argues on appeal that the court erred when it denied his requests for jury instructions on the lesser included offenses of abduction, simple assault, and robbery. The state maintains the court properly declined to give such instructions because the jury could not have acquitted Foster on the greater offenses. The issue here concerns whether the trial court properly denied Foster's request for jury instructions on lesser included offenses.
In State v. Kidder (1987), 32 Ohio St.3d 279, the court stated:
 A criminal defendant is entitled to a lesser-included-offense instruction, however, only where the evidence warrants it. * * * Thus, the trial court's task is two fold: first, it must determine what constitutes a lesser included offense of the charged crime; second, it must examine the facts and ascertain whether the jury could reasonably conclude that the evidence supports a conviction for the lesser offense and not the greater. (Citations omitted.)
Further, in State v. Thomas (1988), 40 Ohio St.3d 213, the court stated in paragraph two of its syllabus:
 Even though an offense may be statutorily defined as a lesser included offense of another, a charge on such lesser included offense is required only where the evidence presented at trial would reasonably support both an acquittal on the crime charged and a conviction upon the lesser included offense. (Citations omitted.)
The record before us reflects that at the close of the state's case, Foster's counsel moved for a judgment of acquittal and requested jury instructions on the lesser included offenses of abduction on the kidnapping charge, aggravated assault on the felonious assault charge, and theft or robbery on the aggravated robbery charge. Regardless of the disparity between what the record reveals counsel requested at trial, a charge on aggravated assault, and what counsel asserts on appeal, a charge on simple assault as the lesser included offense of felonious assault, in accordance with Thomas, the trial court did not err when it declined to instruct the jury on these lesser included offenses because the evidence does not reasonably support both an acquittal on the crimes charged and convictions on the requested lesser included offenses. In fact, in State v. Deem (1988), 40 Ohio St.3d 205, for example, the court stated that aggravated assault is not a lesser included offense of felonious assault unless the element of provocation is present. In this case, it is not. For these reasons, this assignment of error is not well taken and it is overruled.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
 _________________________________________ TERRENCE O'DONNELL, PRESIDING JUDGE
PATRICIA A. BLACKMON, J., JAMES M. PORTER, J., CONCUR