JOURNAL ENTRY AND OPINION
Barron Jackson appeals from a judgment of the common pleas court entered pursuant to a jury verdict finding him guilty of felonious assault with firearm specifications and having a weapon while under disability. On appeal, Jackson argues that his convictions constitute a miscarriage of justice because the jury found him guilty against the manifest weight of the evidence and because prosecutorial misconduct prevented him from receiving a fair trial. After careful review, we reject these contentions and affirm the judgment of the trial court.
The history of the case as reflected in the record reveals that several days prior to April 5, 1999, Jackson robbed Dwayne Pope of a jacket at gun point. On the night of April 5, 1999, Corey Vason picked up Jackson and Demetrius Johnson (a.k.a. DJ) and drove them to a house on Glenboro Street where Jackson went to get a coat from the house. When Jackson came out of the house with a backpack, Pope approached him and asked what Jackson intended to do about the earlier robbery. Jackson walked over toward the car, put down his backpack, reached into the car and thereafter he and DJ emerged with guns. Pope began running down the street as Jackson started shooting. One bullet hit Pope in the left cheek of his buttocks. When Pope turned around, he saw Jackson directly behind him, still shooting at him with a Tech Nine. DJ was also shooting at Pope, from the left side of the street. Pope made it to his uncle's house nearby, called the police, and gave them a report of the incident and a description of the assailants. He then went to the hospital. The police investigated the area of the shooting, interviewed Jimmie Walker, and learned that after the shooting Jackson fled and Vason drove off in the car. Later that evening, the police located Vason's car at a gas station and found Caesar Dameron, who matched the description given by Pope and Walker. The police arrested Dameron, searched the car, and found a backpack containing five bullets on the rear passenger seat. Dameron later tested positive for gunshot residue on his hands. Pope subsequently identified Jackson, Vason and DJ as participants in the shooting from several photographic arrays, but did not identify Dameron.
The grand jury thereafter indicted both Jackson and Demetrius Johnson for felonious assault with a one year and a three year firearm specification and also indicted Jackson for having a weapon while under disability. The court tried their cases jointly. At trial, Pope testified that on the evening of the shooting, after he confronted Jackson about the robbery, Jackson walked toward his car and after reaching inside, both Jackson and DJ started shooting at him, Jackson with a Tech Nine and DJ with a nine millimeter. Pope testified that as he ran toward his uncle's house, he heard bullets hitting the houses and then one bullet hit him in the left cheek of his buttocks. Pope testified that when he turned around, he saw Jackson shooting at him.
Walker largely corroborated Pope's testimony. He testified that he saw Jackson exchange words with Pope, walk toward the car, reach inside the car, and begin shooting at Pope. Walker did not see DJ with a gun but figured that there were two guns because he heard shots going off back to back. On cross-examination, Walker testified that he knew about the prior robbery, but was not sure if a gun had been used.
Jackson then testified in his own defense, stating that when he came out of the house at Glenboro, Pope accosted him and grabbed him. Jackson yanked away and told Pope he was not going with him. At that point, according to Jackson, he heard a couple of shots, ducked, and then ran away. Jackson denied any participation in the shooting.
During trial, Johnson's counsel objected to eighteen leading questions asked by the state and the court sustained sixteen of them. The prosecutor, however, continued to ask leading questions despite court admonitions. In addition, the prosecutor stated the following during cross-examination of Jackson:
 Q: You have come clean all the times you have been accused of a crime. Why don't you tell the truth today?
MR. MANCINO: Objection.
THE COURT: Overruled. (Tr. 506.)
In its charge, the court told the jury not to consider answers to questions that had been sustained or that they had been told to disregard.
Following deliberation, the jury returned a verdict finding Jackson guilty of felonious assault and having a weapon under disability, but acquitted Johnson of felonious assault. The court then sentenced Jackson to a term of nine years. Jackson now appeals, urging that his convictions resulted from a miscarriage of justice. He raises two assignments of error for our review. The first assignment of error states:
 THE VERDICT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE WHEN THERE IS NOT SUBSTANTIAL EVIDENCE UPON WHICH A TRIER OF FACT COULD REASONABLY CONCLUDE THAT THE CHARGES HAD BEEN PROVEN BEYOND A REASONABLE DOUBT.
Jackson contends that the verdict is against the manifest weight of the evidence, maintaining that the evidence pointed to a suspect other than himself: Caesar Dameron, whom the police found in the car and arrested that evening and who subsequently tested positive for gunshot residue. Jackson in addition questions the credibility of Pope and Walker, pointing out that Pope did not testify that he had been robbed at gun point until cross-examination and that Walker testified that he did not know if Pope had been robbed at gun point.
The state asserts that looking at the totality of the circumstances, the jury properly evaluated the evidence presented and returned a verdict of guilt that was reasonable pursuant to the evidence presented.
The issue then presented for review concerns whether the jury convicted Jackson against the manifest weight of the evidence.
The Supreme Court of Ohio, in State v. Lindsey (2000), 87 Ohio St.3d 479,483, enunciated the standard of review for a manifest-weight claim:
 In considering a manifest-weight claim, "'[t]he court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against conviction.'" State v. Thompkins (1997), 78 Ohio St.3d 380, 387, 678 N.E.2d 541, 547, quoting State v. Martin (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 219, 485 N.E.2d 717, 720-721.
Moreover, [i]t is fundamental that the weight to be given the evidence and credibility of the witnesses are primarily for the trier of the facts. State v. Thomas (1982), 70 Ohio St.2d 79, 79-80.
In this case, the defense did not present any evidence that placed Caesar Dameron near the scene of the shooting. As to the credibility of Pope and Walker, the defense failed to impeach these witnesses by presenting evidence showing Pope or Walker's motivations for being untruthful regarding whether Pope was robbed at gun point. Rather, the evidence presented in the case suggested a confrontation between Jackson and Pope in which Pope inquired about an earlier robbery. Pope testified that Jackson shot him and Walker largely corroborated Jackson's participation in the shooting although Jackson denied any participation. Therefore, after reviewing the entire record, weighing the evidence and all reasonable inferences, and considering the credibility of the witnesses, we cannot say that the jury lost its way and created a manifest miscarriage of justice in finding Jackson guilty. Neither are we persuaded that this case falls into the category of the exceptional case in which the evidence weighs heavily against conviction. Thompkins, supra, 78 Ohio St. 3d at 387. Consequently, we do not find that the jury convicted Jackson against the manifest weight of the evidence and we therefore overrule this assignment of error.
Jackson's second assignment of error states:
 PROSECUTORIAL MISCONDUCT PREVENTED THE APPELLANT FROM RECEIVING A FAIR TRIAL.
Jackson maintains that the prosecutor engaged in a pattern of prosecutorial misconduct depriving him of a fair trial by repeatedly asking leading questions despite the court's admonitions. Jackson also argues that the prosecutor misled the jury by improperly referring to all the times [Jackson has] been accused of a crime when Jackson had only two prior convictions. Jackson emphasizes that the prosecutor's misconduct in this case was prejudicial against him, because the state lacked overwhelming evidence against him, pointing to the fact that Jackson's co-defendant was acquitted based on the same evidence; that Caesar Dameron might very well have been the real shooter; and that eyewitness testimony alone linked him to the shooting.
The state urges that the prosecutor's conduct did not rise to the level of prosecutorial misconduct. It points out that the trial court sustained sixteen of the eighteen objections, raised mostly by counsel for the co-defendant. The state also emphasizes that the trial court properly charged the jury regarding the questions challenged.
The issue presented for our review thus concerns whether prosecutorial misconduct deprived appellant of a fair trial.
The court in State v. Apanovitch (1987), 33 Ohio St.3d 19, stated that a prosecuting attorney's conduct during trial does not constitute a ground for error unless the conduct deprives the defendant of a fair trial. Further, in Smith v. Phillips (1982), 455 U.S. 209,102 S.Ct. 940, 71 L.Ed.2d 78, the court stated that [t]he touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor. Finally, the effect of the prosecutor's alleged misconduct must be considered in light of the whole trial. State v. Maurer (1984), 15 Ohio St.3d 239.
As a threshold matter, the issue of improper leading questions is deemed waived if the defense did not object to the improper questions when asked. State v. D'Ambrosio (1983), 67 Ohio St.3d 185, 190. Here, Jackson's counsel did not raise objections to the vast majority of the improper questions. Jackson therefore waived the issue. Even if his counsel were to have objected to these questions, the trial court sustained sixteen of the eighteen objections and properly charged the jury. The record reveals that the prosecutor repeatedly ignored the court's admonitions not to ask leading questions. Our inquiry, however, must be focused on the fairness of the trial, not the culpability of the prosecutor.
Considering the effect of the prosecution's repeated use of leading questions and her reference to the defendant's prior convictions in the context of the entire trial, we conclude that the challenged prosecutorial conduct did not deprive Jackson of an otherwise fair trial. Accordingly, we overrule this assignment of error and affirm the judgment of the trial court.
 ________________________ JUDGE TERRENCE O'DONNELL
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.