JOURNAL ENTRY AND OPINION
{¶ 1} James R. Ware appeals from a judgment of conviction entered by Judge Ann T. Mannen after a jury found him guilty of attempted murder,[1] felonious assault,[2] carrying a concealed weapon,[3] and having a weapon under a disability,[4] as well as firearms specifications[5]
attached to the charges of attempted murder and felonious assault. He claims it was error to not direct a verdict of acquittal on the attempted murder charge, that the verdicts were against the manifest weight of the evidence, that the prosecutor made improper comments during closing argument, and that he was prejudiced when the State introduced evidence of two prior convictions to support the charge of having a weapon while under a disability. We affirm.
 {¶ 2} Then fifty-six-year-old Ware was arrested on charges stemming from an October 2002 shooting incident at Ernest Pickett's candy/convenience store at 12031 Continental Avenue in Cleveland Pickett testified that Ware came into the store and complained about its hours of operation and Pickett's failure to stock certain items. When he told Ware to leave, Ware pulled a gun and shot at him. Pickett ran to the back of the store and Ware eventually left.
 {¶ 3} Norna Days, Pickett's neighbor, ex-girlfriend and a nurse technician, stated that she saw Ware at the store that afternoon and heard the gunshots. After he left, she entered and discovered that Pickett had sustained two bullet wounds in his buttocks and a graze wound on his left shoulder blade. She convinced him to call the police and an ambulance.
 {¶ 4} Cleveland police officers responded to the scene and recovered one bullet on top of an old delicatessen-style display case, and found two more bullets lodged between two thick panes of glass in the display case. Sergeant Michael Seaborn, who performed the crime scene investigation, stated that the bullets lodged between the thick panes of glass appeared to be the same type as the one found on top of the display case. The bullet on top of the case appeared to have struck a box fan, which was also on top of the case, before coming to rest. Forensic Detective Nathan Willson concluded that the bullet found on top of the case was fired from a .32 caliber weapon.
 {¶ 5} The jury found Ware guilty on all counts, and the judge sentenced him to concurrent prison terms of two years for felonious assault, six months each for carrying a concealed weapon and having a weapon under disability, and three years for attempted murder. She also imposed three-year prison terms for each of the gun specifications, which merged with each other but were imposed prior to and consecutive with the prison terms imposed for the other offenses.[6] Ware states four assignments of error on appeal, which are included in an appendix to this opinion.
 {¶ 6} He first argues that the State presented insufficient evidence that he intended to kill Pickett, as required for the offense of attempted murder.[7] A sufficiency claim presents a question of law that we review de novo[8] to determine "whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."[9]
 {¶ 7} Ware concedes that the use of a firearm ordinarily supports an inference that its user intended to kill,[10]
but contends that the inference is not justified here. He claims that the shots fired at Pickett were at waist level or below, and that any shots fired above waist level did not endanger him. He claims the encounter occurred at close range in a small store and, therefore, any actual attempt to kill Pickett would have been successful.
 {¶ 8} In spite of Ware's claims, the evidence showed that one bullet grazed Pickett's left shoulder blade, and this fact indicates both that it was fired at Pickett and that it was fired in an area that could have caused death if it had struck him squarely. Moreover, even though the store was small, Pickett testified that he escaped by running behind the display case to the back of the store. Therefore, even though Pickett was fortunate enough to receive relatively minor injuries, this does not rebut, as a matter of law, the allowable inferences raised by Ware's use of a firearm and the bullet wound observed on Pickett's shoulder blade.[11] The evidence, if believed, was sufficient to support an inference that Ware intended to kill Pickett. The first assignment is overruled.
 {¶ 9} Ware next challenges the manifest weight of the evidence, not only with respect to the evidence of his intent to kill, but also with respect to his identification as the offender. We review a manifest weight challenge to determine "whether the evidence produced attains the high degree of probative force and certainty required of a criminal conviction."[12] Under the manifest weight test, a new trial should not be ordered unless the evidence weighs so heavily against conviction that the verdict appears unjust.[13]
 {¶ 10} The only defense witness, Will Berry, testified that Ware was at his house on Morton Avenue in Cleveland at about 4:30 p.m. on October 14, 2002. Ware claims the State failed to present credible evidence that he was the offender because Berry's testimony shows he was elsewhere, and because the testimony identifying him as the offender is not credible. He claims Pickett's testimony identifying him as the offender cannot be believed because Pickett admitted to a criminal record, including drug possession, voluntary manslaughter, aggravated robbery, and aggravated assault. He also claims that Norna Days' identification is tainted because she admitted that, following the incident, her vision was corrected for nearsightedness.
 {¶ 11} Despite Pickett's criminal record and Ms. Days' vision problems, the jury had substantial evidence that Ware was the offender. Both of them described Ware's gray Buick as the car he drove to the store, and a gray Buick was parked in Ware's garage on the day of his arrest. Moreover, Pickett identified Ware as someone he had known before, and Ms. Days stated that she recognized Ware as someone she had seen before, although she did not know him personally.
 {¶ 12} Even though Berry testified that Ware was at his house at 4:30 that afternoon, Pickett testified that the incident occurred at 3:00 p.m. or 4:00 p.m., and that there was a delay between the shooting and his eventual call for police and medical assistance. Furthermore, the State successfully raised the issue of Berry's bias and his ability to remember the day of the shooting. Therefore, despite Berry's testimony, the jury could reasonably conclude that Ware committed the shooting.
 {¶ 13} Ware also contends that the finding of intent to kill is against the manifest weight of the evidence. Although the evidence supporting his intent to kill can be disputed, we are entitled to reverse on manifest weight grounds only when the verdict appears unreasonable. Because there was evidence that Ware fired several shots, at least one of which was aimed high enough to go over the display counter, and because there was also evidence that one shot grazed Pickett's shoulder blade, we do not find that the jury's finding of intent was unreasonable. Therefore, the second assignment is overruled.
 {¶ 14} Ware next submits that he suffered prejudice when the assistant prosecutor made improper statements during closing argument. A claim of prosecutorial misconduct must show that the challenged conduct was improper and that the improprieties deprived a defendant of a fair trial.[14] The issue of prejudice is determined by reference to the entirety of the closing argument, and prejudice is less likely to be found if the misconduct was an "isolated incident."[15]
 {¶ 15} Ware claims the assistant prosecutor's repeated references to "unrefuted" facts were unfair, because those references improperly shifted the burden of proof to the defense. We first note that Ware's lawyer did not object to these references, and we must review them under a plain error standard.[16]
 {¶ 16} In closing argument, the assistant prosecutor stated that it was "unrefuted" that Ernest Pickett was shot on October 14, 2002, that he went to the hospital for treatment, that spent bullets were found in Pickett's store, that Pickett and Ms. Days both identified Ware as the shooter, that they stated Ware drove a gray car, and that a gray car was found on Ware's property. All of these factual claims are supported by the evidence, and the assistant prosecutor fairly characterized those facts as "unrefuted."
 {¶ 17} We disagree with the contention that use of the word "unrefuted" unfairly shifts the burden of proof to the defendant. The assistant prosecutor defined the term to the jury as meaning an assertion to which there was no evidence to the contrary. These assertions do not shift the burden of proof, because Ware was free to argue that there was evidence to refute the factual claims, and he was free to argue that the burden of proof remained with the State. The assistant prosecutor fairly used the term "unrefuted" to highlight her belief in the strength of particular evidence, and we do not find this argument improper.
 {¶ 18} Ware also argues that the assistant prosecutor committed misconduct when she told the jury, "Don't get confused by the defense attorney and lawyer tricks. He is trying to confuse you." Such derogatory remarks are improper and, if shown to be prejudicial, are grounds for reversal.[17] However, we note that the judge sustained Ware's objection to the comment, but Ware failed to request that a curative instruction be given or that the comment be stricken. When an objection is made and sustained, error can be waived if the party fails to seek appropriate relief.[18] Therefore, the plain error standard also applies to this claim.[19]
 {¶ 19} Even though the assistant prosecutor's comment was improper, we do not find this single incident sufficient to show prejudice.[20] Although Ware failed to request an appropriate cure, he did object to the comment, the objection was sustained, and there were no further incidents. We are sufficiently convinced that the jury would have reached the same verdict absent this single comment.[21]
 {¶ 20} Finally, Ware claims the assistant prosecutor improperly attempted to bolster the credibility of Ms. Days by stating that she testified without first reviewing her written statement. Although he claims the judge sustained his objection to this remark, the transcript actually shows that the judge sustained an objection when the assistant prosecutor made an erroneous factual claim concerning Ms. Days' testimony. Furthermore, even if the objection concerned an attempt to bolster her credibility, Ware again waived error by failing to request a curative instruction.[22] Moreover, we do not find that the assistant prosecutor's reference to Ms. Days' lack of preparation was unfairly prejudicial. The third assignment is overruled.
 {¶ 21} In his last assignment, Ware claims that the judge erred in allowing evidence of his two prior convictions; a 1977 conviction for felonious assault and a 1988 conviction for aggravated assault, to prove the offense of having a weapon under a disability, when evidence of only one offense was necessary.
 {¶ 22} We agree that only one prior felony conviction was necessary to prove such "disability" under R.C. 2923.13 and, therefore, the judge should have excluded admission of a second conviction because the evidence was unnecessarily cumulative.[23] Nevertheless, the error does not rise to constitutional proportions, and we can find non-constitutional errors harmless if it appears that substantial other evidence supported the convictions.[24] Although the State presented evidence of two prior felony convictions, the evidence was used for the limited purpose of proving Ware's guilt under R.C.2923.13, and he has not shown that the convictions were misused in any way to argue his guilt on the felonious assault or attempted murder counts. Furthermore, Ware could have stipulated to the prior conviction element and prevented a detailed presentation of either conviction,[25] but he did not. Under the circumstances, we do not find that Ware was prejudiced by the presentation of both prior convictions. The fourth assignment is overruled.
 {¶ 23} The judgment is affirmed.
Judgment affirmed.
Dyke and Celebrezze Jr., JJ., concur.
 APPENDIX — ASSIGNMENTS OF ERROR "I. The trial court erred in denying appellant's motion foracquittal when the state failed to present sufficient evidence ofattempted murder."
 "II. The appellant's convictions are against the manifestweight of the evidence."
 "III. The prosecutor's misconduct violated the appellant'sright to a fair trial guaranteed by the due process provisions ofArticle I, Section 16 of the Ohio Constitution and theFourteenth Amendment to the United States Constitution."
 "IV. The trial court erred by allowing testimony of other actswhich substantially prejudiced the appellant."
It is ordered that appellee recover of appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Cuyahoga County Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
[1] R.C. 2903.02, 2923.02.
[2] R.C. 2903.11.
[3] R.C. 2923.12.
[4] R.C. 2923.13.
[5] R.C. 2941.145.
[6] R.C. 2929.14(D)(1)(a)(ii), 2929.14(D)(1)(b),2929.14(E)(1)(a). He was also advised of post release controls.
[7] R.C. 2903.02(A), 2923.02(A); State v. Widner (1982),69 Ohio St.2d 267, 268-269, 23 O.O.3d 265, 431 N.E.2d 1025.
[8] State v. Thompkins, 78 Ohio St.3d 380, 386, 1997-Ohio-52,678 N.E.2d 541.
[9] (Emphasis sic.) State v. Stallings, 89 Ohio St.3d 280,289, 2000-Ohio-164, 731 N.E.2d 159, quoting Jackson v. Virginia
(1979), 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560.
[10] Widner, 69 Ohio St.2d at 270; State v. Smith (1993),89 Ohio App.3d 497, 501, 624 N.E.2d 1114.
[11] Widner; Smith.
[12] State v. Getsy, 84 Ohio St.3d 180, 193, 1998-Ohio-533,702 N.E.2d 866.
[13] State v. Lindsey, 87 Ohio St.3d 479, 483, 2000-Ohio-465,721 N.E.2d 995.
[14] State v. Phillips, 74 Ohio St.3d 72, 90, 1995-Ohio-171,656 N.E.2d 643.
[15] State v. Keenan (1993), 66 Ohio St.3d 402, 410,613 N.E.2d 203.
[16] State v. Barnes, 94 Ohio St.3d 21, 27, 2002-Ohio-68,759 N.E.2d 1240.
[17] State v. Smith (1984), 14 Ohio St.3d 13, 14, 14 OBR 317,470 N.E.2d 883; see, also, State v. Fears, 86 Ohio St.3d 329,356-357, 1999-Ohio-111, 715 N.E.2d 136 (Moyer, C.J., concurring in part and dissenting in part).
[18] Columbus v. Figge (July 11, 2000), Franklin App. No. 99AP-940, citing Fensel v. Regional Transit Auth. (Oct. 11, 1979), Cuyahoga App. No. 39395.
[19] Barnes, supra.
[20] Cf. Keenan, supra.
[21] Smith, 14 Ohio St.3d at 15; Barnes,94 Ohio St.3d at 27.
[22] Figge, supra.
[23] Evid.R. 403(B); State v. Henton (1997),121 Ohio App.3d 501, 507-508, 700 N.E.2d 371.
[24] State v. Webb, 70 Ohio St.3d 325, 335, 1994-Ohio-425,638 N.E.2d 1023.
[25] Henton, supra.