JOURNAL ENTRY AND OPINION
{¶ 1} Tashika Gamble, defendant-appellant, appeals her conviction for aggravated assault. For the reasons that follow, we affirm.
 {¶ 2} Appellant and her co-defendant, Latrice Vincent, were each indicted by the Cuyahoga Grand Jury on two counts of felonious assault. Count one of the indictment alleged that appellant and Vincent knowingly caused serious physical harm to the victim, Tameka Lee. Count two alleged that appellant and Vincent knowingly caused or attempted to cause physical harm to Lee by means of a deadly weapon or deadly ordnance. Appellant and Vincent pled not guilty to the charges at their arraignment.
 {¶ 3} Thereafter, appellant and Vincent waived their right to a trial by jury, and the case proceeded to a bench trial. At the conclusion of the State's case-in-chief, appellant made a Crim.R. 29 motion for acquittal as to both counts, which was denied. After presenting evidence on her own behalf, appellant renewed her Crim.R. 29 motion for acquittal as to both counts, which was again denied.
 {¶ 4} After deliberating, the court found appellant guilty of a lesser included offense of count one, aggravated assault, and not guilty of count two. Vincent was found guilty of a lesser included offense of count one, assault, and not guilty of count two. Appellant was thereafter sentenced to one year of community control. She now contends in this appeal that her conviction was against the manifest weight of the evidence.
 {¶ 5} The record before us demonstrates that on the day in question, appellant, Vincent and Lee were involved in a physical altercation. The trial testimony varied on how the altercation started. According to Lee (the victim), appellant jumped from behind a wall that separated a walkway from the building where Lee lived as she and her children were walking down the walkway. Lee testified that appellant had a hammer in her hand, and used the hammer to strike her in the face, and that Lee also bit her in the face. According to Lee, after being struck by appellant with the hammer, she began to fight and eventually co-defendant Vincent joined in the affray and kicked Lee. Lee recounted that when kicked in the leg by Vincent, she fell, and appellant landed on top of her. While still on top of her, appellant struck Lee in the face with her fists. Lee further testified that while she was on the ground Vincent kicked her approximately four times.
 {¶ 6} Lee testified that while she was on the ground, she requested her son summon a neighbor, Latisha Moore, for help. While her son was getting help, Vincent tried to pull appellant off of Lee, but Lee continued to hold onto appellant. Lee also testified that sometime during the melee, Vincent cut her behind her ear with a box cutter.
 {¶ 7} Moore testified that she saw appellant on top of Lee, with each woman having hold of the other's hair. Moore testified that she did not see a hammer or a box cutter at the scene.
 {¶ 8} Later that day, Lee went to her cousin's home where her cousin photographed a cut behind her ear, her swollen face and a black eye. Her cousin then took Lee to the hospital, where she was treated for an acute facial contusion and received six stitches for the cut behind her ear. The medical records indicate that Lee informed the hospital personnel that she was "jumped," and kicked and bitten in the face area. Lee was released from the hospital that same day with pain medication, which she testified she took for about one week. Lee testified that the swelling to her face lasted approximately two weeks and her eye was black for approximately six weeks.
 {¶ 9} Prior to being released from the hospital, Lee spoke with the police about the incident. Lee told the investigating officer that appellant hit her in the face with a hammer. She did not tell the officer that appellant bit her in the face or that Vincent cut her with a box cutter. About one month after the incident, Lee provided a written statement to the officer. In that statement, she averred that Vincent cut her with a box cutter.
 {¶ 10} Lee further testified that later the same day of the incident, she saw appellant and a man in a car at a gas station, and the man lifted up his shirt and showed Lee a gun.
 {¶ 11} Moreover, Lee testified that she received a threatening phone call from a person whose voice she recognized as being that of appellant. Lee's testimony was ambiguous as to whether she received the call before or after the altercation with appellant.
 {¶ 12} Appellant testified on her own behalf at trial, and recounted that on the day in question she and Vincent had arrived at a relative's apartment, which apparently was located in the same building where Lee lived, when Lee came around a corner and words were exchanged. Appellant testified that after the exchange, Lee ran towards appellant. Appellant further stated that she pulled Lee's hair and the two began to fight. Appellant testified that she was defending herself, and denied having a hammer and biting as alleged by Lee.
 {¶ 13} Appellant further testified that after the altercation she and Vincent were in their car when she observed Lee run to her car and get a baseball bat out of her trunk and then run towards appellant and Vincent's car with the bat.
 {¶ 14} Later that day, while appellant was at the home of a friend, Mark Hudson, Lee arrived by car, opened the door and a bat was visible. Hudson testified that he also saw the bat.
 {¶ 15} Co-defendant Vincent testified on her own behalf at trial. According to her testimony, appellant and Lee exchanged words, after which Lee ran up to appellant and starting swinging. Vincent testified that she was not able to see who was hit first, as it appeared that appellant and Lee had started fighting at the same time. Vincent denied having a box cutter, and testified that she only attempted to break up the fight. Further, Vincent testified that as she and appellant were leaving the scene in their car, she saw Lee running after the car with a bat.
 {¶ 16} Moore, the neighbor summoned by Lee's son, testified that she did see Lee open her trunk, but did not see her take a bat out of the trunk.
 {¶ 17} In her first assignment of error, appellant contends that her conviction for aggravated assault was against the manifest weight of the evidence because the State failed to prove beyond a reasonable doubt that she "knowingly" caused "serious physical harm" to Lee. We disagree.
 {¶ 18} In evaluating a challenge to the verdict based on manifest weight of the evidence, a court sits as the thirteenth juror, and intrudes its judgment into proceedings which it finds to be fatally flawed through misrepresentation or misapplication of the evidence by a jury which has "lost its way." State v.Thompkins, 78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541. As the Supreme Court of Ohio declared:
 {¶ 19} "Weight of the evidence concerns `the inclination of the greater amount of credible evidence offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief.'
 {¶ 20} "* * * The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Id. at 387, quoting Black's Law Dictionary (6 Ed. 1990) at 1594.
 {¶ 21} However, this court should be mindful that the weight of the evidence and the credibility of witnesses are matters primarily for the trier of fact, and a reviewing court must not reverse a verdict where the trier of fact could reasonably conclude from substantial evidence that the State has proven the offense beyond a reasonable doubt. State v. DeHass (1967),10 Ohio St.2d 230, 227 N.E.2d 212, at paragraphs one and two of the syllabus. The goal of the reviewing court is to determine whether a new trial is mandated. A reviewing court should only grant a new trial in the "exceptional case in which the evidence weighs heavily against a conviction." State v. Lindsey,87 Ohio St.3d 479, 483, 2000-Ohio-465, 721 N.E.2d 995. (Citation omitted.)
 {¶ 22} R.C. 2903.12 governs aggravated assault, and provides in pertinent part as follows:
 {¶ 23} "(A) No person, while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force shall knowingly:
 {¶ 24} "(1) Cause serious physical harm to another or to another's unborn;
 {¶ 25} "(2) Cause or attempt to cause physical harm to another or another's unborn by means of a deadly weapon or dangerous ordnance * * *."
 {¶ 26} "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B).
 {¶ 27} R.C. 2901.01(5) provides that:
 {¶ 28} "`Serious physical harm to persons' means any of the following:
 {¶ 29} "(a) Any mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment;
 {¶ 30} "(b) Any physical harm that carries a substantial risk of death;
 {¶ 31} "(c) Any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity;
 {¶ 32} "(d) Any physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement;
 {¶ 33} "(e) Any physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged intractable pain."
 {¶ 34} Upon review, we find that the record in this case supports appellant's conviction for aggravated assault. The evidence demonstrated that appellant acted knowingly in assaulting Lee. The record also demonstrates that Lee suffered serious physical harm as a result of appellant's actions.
 {¶ 35} Recently, in State v. Blaine (July 28, 2005), Cuyahoga App. No. 85113, this court found "serious physical harm" to support a felonious assault conviction where the victim required five stitches to his forehead and remained in the hospital two days for observation.
 {¶ 36} In this case, Lee suffered an acute facial contusion and required five stitches for the cut behind her ear. Further, she was treated with pain medication for about one week after the incident, and her face remained swollen and her eye black for approximately two and six weeks, respectively, after the incident.
 {¶ 37} Appellant argues that she should have only been convicted, if at all, of assault. In particular, she cites Lee's own testimony that it was Vincent who cut her ear with the box cutter. On this point, however, it is important to remember that the finder of fact assesses issues of credibility. DeHass,
supra. Apparently, the trial judge discounted Lee's testimony that Vincent cut her with a box cutter. Upon review, we cannot find that the trial court clearly lost its way on this issue. No box cutter was ever found at the scene, Lee failed to inform the hospital personnel about being cut with the box cutter, nor did she originally state this to the police. The box cutter was first mentioned one month after the incident. Moreover, the testimony demonstrated that appellant and Lee were scratching and hitting each other, and that appellant had rings on her fingers while doing so. From that evidence, the trial court could rationally find that appellant caused Lee's injuries, including the cut to her ear.
 {¶ 38} Accordingly, the State presented credible evidence that appellant caused serious physical harm to Lee and hence appellant's first assignment of error is overruled.
 {¶ 39} In her second assignment of error, appellant contends that the evidence she presented proved by a preponderance of the evidence that she acted in self-defense.
 {¶ 40} Under Ohio law, self-defense is an affirmative defense for which an accused must prove the following by a preponderance of the evidence: (1) the accused was not at fault in creating the situation giving rise to the affray; (2) the accused had a bona fide belief that he or she was in imminent danger of death or great bodily harm and that the only means of escape from such danger was in the use of force; and (3) the accused must not have violated any duty to retreat or to avoid the danger. State v.Williford (1990), 49 Ohio St.3d 247, 249, 551 N.E.2d 1279. Further, the "elements of self-defense are cumulative. * * * If the defendant fails to prove any one of these elements by a preponderance of the evidence he has failed to demonstrate that he acted in self-defense." State v. Jackson (1986),22 Ohio St.3d 281, 284, 490 N.E.2d 893.
 {¶ 41} Upon review, we find that appellant failed to establish by a preponderance of the evidence that her actions were taken in self-defense. The trier of fact was in the best position to evaluate the demeanor and credibility of the witnesses and determine the weight to be accorded to the evidence. DeHass, supra. Based on the state of the evidence, the trial court could rationally find that any one of the elements of self-defense had not been established by a preponderance of the evidence. The record contains substantial, credible evidence upon which the trier of fact could determine appellant knowingly caused physical harm to Lee. As there is testimony in the record that, if believed, would permit a trier of fact to disbelieve appellant's version of events, we cannot say the trier of fact lost its way in rejecting appellant's claim of self-defense.
 {¶ 42} Appellant's second assignment of error is therefore overruled.
Judgment affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Sweeney, P.J., and Kilbane, J., Concur.