JOURNAL ENTRY AND OPINION
{¶ 1} Stanley Smith ("Smith") appeals from his conviction received in the Cuyahoga County Court of Common Pleas. Smith argues that the State of Ohio ("State") supplied insufficient evidence to support his convictions, his convictions are against the manifest weight of the evidence, and his sexual predator classification is contrary to law. For the following reasons, we affirm the decision of the trial court.
 {¶ 2} This case involves the rape and kidnapping of Charity Lewis ("Lewis") a woman who was born on September 18, 1917. Charity Lewis was eighty-seven years old at the time of this incident and lived alone at 2383 East 40th Street, Cleveland, Ohio, in a Cuyahoga Metropolitan Housing Authority apartment. Lewis' apartment was small, and she slept in a reclining chair in her living room. At the time of the incident, Lewis was unable to walk and had been wheelchair bound for some time. In addition, Lewis suffered from arthritis in her shoulders, legs, back, and *Page 2 
arms. Lewis took approximately twelve different pills daily to help with her pain. Lewis also had an in-home health aid who came every day for four hours.
 {¶ 3} Smith lived with his father in the apartment next to Lewis. Smith was forty-two years old at the time of the offense. Almost daily, Smith visited Lewis and helped her with her chores around the house and often took her to the store. Lewis would call Smith almost every day and ask him to help her do things around her apartment. Residents of the apartment complex often saw Smith and Lewis together.
 {¶ 4} On August 27, 2005, Smith went into Lewis' apartment, which she often left unlocked for him. Smith said that he wanted to have sex with Lewis, but she said no. Smith said he was going to have sex with her anyway. Smith picked Lewis up from her chair and laid her down on the floor. Lewis testified that she struggled and tried to fight off Smith but that she could not move and was in a great deal of pain. Lewis stated that Smith put his private part inside of her private part and that she was crying and was very upset. When Smith was finished, he picked Lewis up from the floor, cleaned her off and put powder on her body. Smith then returned her to her chair and fell asleep on the floor.
 {¶ 5} While Smith was asleep, Lewis called her daughter, Charlene Harmon ("Harmon"). Harmon stated that she was at the hospital visiting her son when she received a call from her mother. Harmon described her mother's condition as being *Page 3 
totally dependent on others and that she was in need of around-the-clock care. Harmon further stated that her mother could not walk, bathe herself, or prepare her own meals. Harmon admitted that although she knew of her mother's condition, she only visited her once or twice each month because of her work schedule.
 {¶ 6} On August 27, 2005, Harmon responded to her mother's house after receiving the phone call. When she arrived, Harmon observed Smith lying on the floor asleep. Harmon nudged Smith with her foot and told him to leave. Smith left and immediately thereafter, Lewis told her daughter that Smith had raped her the night before. As Lewis told Harmon what happened to her, she was extremely upset and visibly frantic. Harmon called both the Cleveland Police Department and the Cleveland Emergency Medical Service.
 {¶ 7} Lewis later stated that Smith had raped her on another occasion but that she could not remember when this happened. Lewis stated that she never called the police because she was afraid of Smith. She also stated that she allowed Smith back into her apartment after the first rape because she had no one else to take care of her.
 {¶ 8} Cleveland Paramedic Damien Myers ("Paramedic Myers") responded to Lewis' apartment in connection with the rape report. Paramedic Myers and his partner transported Lewis from her apartment into the EMS vehicle. Once inside the *Page 4 
truck, paramedic Myers took her vitals and began to prepare a report. Paramedic Myers testified that Lewis told him the following:
 "[s]he was watching the baseball game last night. Her male neighbor came into her apartment. At this point she stated that she was scared. After several minutes [the] suspect told her he wanted to have sex with her. She replied that she did not want to. He then replied you are going to do what I say. She says he pushed her to the floor, had his way with her. Patient was complaining of soreness all over. Patient has abrasion on right knee with swelling and denies chest pain or shortness of breath."
 {¶ 9} While Lewis and her daughter were in the EMS vehicle, Harmon observed Smith walking towards another apartment in the complex. Harmon told paramedics who informed the Cleveland Police Officers.
 {¶ 10} Police Officer Chris Hamrick ("Officer Hamrick") testified that he received the call to respond to 2383 East 40th Street for a female victim of a sexual assault. When he arrived, Officer Hamrick took the information from the victim and her daughter, and then left once EMS arrived. Officer Hamrick later received a radio broadcast that Smith was located inside of an apartment in the complex. Officer Hamrick responded to that location and placed Smith under arrest. Officer Hamrick read Smith his rights and transported him to the police department. During the transport, Smith admitted to having sexual intercourse with Lewis but said that it was alright, because she was his girlfriend.
 {¶ 11} EMS transported Lewis to Saint Vincent Charity Hospital where she was seen by Dr. Sandra Chisar ("Dr. Chisar"). Dr. Chisar ordered Lewis placed in a *Page 5 
private room where pelvic examinations are done and rape kits are completed. Dr. Chisar described Lewis as a very decrepit, elderly woman and explained that she had a difficult time getting Lewis on the bed for an examination. Dr. Chisar testified that once she got Lewis onto the bed, she was unable to perform the examination. Dr. Chisar explained that Lewis' legs were too arthritic and her body was not able to bend. She was not able to get Lewis' legs into the stirrups and eventually, the nurses had to hold Lewis' legs, separating them as far as they could go, so Dr. Chisar could get a specimen. Dr. Chisar then released Lewis from the hospital.
 {¶ 12} Detective Michael Kovach ("Detective Kovach") was assigned to investigate this case. Detective Kovach interviewed Lewis, who had moved in with her granddaughter after the incident because she was terrified to live on her own. Detective Kovach stated that Lewis looked feeble and appeared to be in pain; he also stated that she could not pick up her head.
 {¶ 13} Detective Kovach also interviewed Smith. As Detective Kovach advised Smith of his rights, Smith stated that this was "b.s." and that Lewis' daughter was the reason he was in jail. Smith did not deny having sex with Lewis, and told Detective Kovach that Lewis was "his girl or his woman." Smith then voluntarily permitted Kovach to take buccal swabs, which were later sent to the Bureau of Criminal Investigation for testing. *Page 6 
 {¶ 14} Christopher Smith and Melissa Zielaskiewicz both work for the Ohio Attorney General's Office in the Bureau of Criminal Investigations. Both Christopher Smith and Zielaskiewicz performed testing on the contents of Lewis' rape kit and the buccal swabs voluntarily provided by Smith. After detecting the presence of semen on the vaginal swabs of the rape kit, further tests were performed and Zielaskiewicz concluded that Smith could not be excluded as the source of the semen on the vaginal swabs.
 {¶ 15} On September 14, 2005, a Cuyahoga County Grand Jury returned an indictment charging Smith with four counts of rape, two counts of kidnapping, one count of aggravated robbery and one count of theft. Smith pleaded not guilty and his case proceeded to a jury trial on May 15, 2006.
 {¶ 16} During trial, Smith elicited the testimony of three defense witnesses: Lynnetta Jackson, Frances Lawrence, and Yvonne Hoffman. All three women lived in the same apartment complex as Smith and Lewis. All three testified that they always saw Smith and Lewis together, that Lewis would ask them to call Smith for her, and that they believed Smith and Lewis were in a relationship. Additionally, Lynnetta Jackson testified that Lewis told her that she and Smith were intimate. None of the three witnesses actually observed any intimacy between Smith and Lewis. *Page 7 
 {¶ 17} On May 19, 2006, the jury found Smith guilty of one count of rape and one count of kidnapping. The jury found Smith not guilty of the remaining six counts. On July 21, 2006, the trial court classified Smith as a sexual predator and then sentenced him to a total prison term of ten years. Smith appeals, raising the three assignments of error contained in the appendix to this opinion.
 {¶ 18} In his first assignment of error, Smith argues that the State supplied insufficient evidence to support his convictions for rape and kidnapping. In his second assignment of error, Smith claims his convictions are against the manifest weight of the evidence. Although these arguments involve different standards of review, we will consider them together because we find the evidence in the record applies equally to both.
 {¶ 19} The standard of review with regard to the sufficiency of the evidence is set forth in State v. Bridgeman (1978), 55 Ohio St.2d 261, as follows:
 "Pursuant to Criminal Rule 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt."
 {¶ 20} Bridgeman must be interpreted in light of the sufficiency test outlined in State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus, in which the Ohio Supreme Court held:
 "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence submitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a *Page 8 
reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." (Citation omitted.)
 {¶ 21} In evaluating a challenge to the verdict based on manifest weight of the evidence, a court sits as the thirteenth juror, and intrudes its judgment into proceedings which it finds to be fatally flawed through misrepresentation or misapplication of the evidence by a jury which has "lost its way." State v. Thompkins, 78 Ohio St.3d 380,1997-Ohio-52. As the Ohio Supreme Court declared:
 "Weight of the evidence concerns `the inclination of the greater amount of credible evidence offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief.'
 * * * The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Id. at 387. (Internal citations omitted.)
 {¶ 22} However, this court should be mindful that the weight of the evidence and the credibility of witnesses are matters primarily for the trier of fact, and a reviewing court must not reverse a verdict where the trier of fact could reasonably conclude from substantial evidence that the State has proven the offense beyond a *Page 9 
reasonable doubt. State v. DeHass (1967), 10 Ohio St.2d 230, at paragraphs one and two of the syllabus. The goal of the reviewing court is to determine whether the new trial is mandated. A reviewing court should only grant a new trial in the "exceptional case in which the evidence weighs heavily against a conviction." State v. Lindsey,87 Ohio St.3d 479, 483, 2000-Ohio-465. (Internal citation omitted.)
 {¶ 23} The jury convicted Smith of one count of rape, which pursuant to R.C. 2907.02(A)(1)(C) provides as follows:
 "No person shall engage in sexual conduct with another who is not the spouse of the offender * * * when the other person's ability to resist or consent is substantially impaired because of a mental or physical condition or because of advanced age, and the offender knows or has reasonable cause to believe that the other person's ability to resist or consent is substantially impaired because of a mental or physical condition or because of advanced age."
 {¶ 24} The jury also convicted Smith of one count of kidnapping, which
 {¶ 25} pursuant to R.C. 2905.01(A)(2) provides as follows:
 "No person, by force, threat, or deception * * * shall remove another from the place where the other person is found or restrain the liberty of the other person * * * to facilitate the commission of any felony * * *."
 {¶ 26} In the present case, the State presented sufficient evidence to support Smith's convictions for rape and kidnapping. Primarily, the evidence in the record overwhelmingly established that Lewis' ability to resist or consent was substantially impaired because of her advanced age and physical condition. Lewis testified that she has been unable to walk for years and that she needs constant help taking care of herself. Harmon testified that her mother requires around-the-clock care and that *Page 10 
her mother was unable to bathe herself, or cook her own meals. Additionally, Lewis testified that Smith had been helping her for a few years because of her inability to care for herself.
 {¶ 27} Secondly, Lewis testified that Smith forcibly removed her from her chair, placed her on the floor, and forced himself on her. The victim explained how she tried to struggle and fight but that she could not move or fight Smith off of her because of her physical limitations. Lewis stated that she did not want to have sexual intercourse with Smith, but he did so anyway.
 {¶ 28} Finally, Dr. Chisar testified that the victim's legs were so arthritic that she was unable to perform a proper examination on Lewis. Dr. Chisar did recover semen from the victim's body, which was later identified to be Smith's.
 {¶ 29} Therefore, after viewing the evidence in the light most favorable to the prosecution, we conclude that any rational trier of fact could have found the essential elements of rape and kidnapping proven beyond a reasonable doubt. Jenks, supra. Smith's first assignment of error is overruled.
 {¶ 30} We further find that the trier of fact did not lose its way in convicting Smith of rape and kidnapping. Although Smith argues that his version of the events should have been relied upon by the jury, the trier of fact is in the best position to weigh the evidence and the credibility of witnesses. As the reviewing court, we find that the trier of fact could reasonably conclude from the substantial evidence *Page 11 
presented by the State, that the State has proven the offenses beyond a reasonable doubt. Accordingly, we cannot state that the trier of fact lost its way and created such a manifest miscarriage of justice that the convictions must be reversed and a new trial ordered.
 {¶ 31} Smith's second assignment of error is overruled.
 {¶ 32} In his third and final assignment of error, Smith argues that the State failed to establish by clear and convincing evidence, that he was likely to engage in one or more sexually oriented offenses in the future. This assignment of error lacks merit.
 {¶ 33} A "sexual predator" is a person who has been convicted of or pleaded guilty to committing a sexually oriented offense and is likely to engage in the future in one or more sexually oriented offenses. R.C.2950.01(E)(1). State v. Wilson, 113 Ohio St.3d 382, 2007-Ohio-2202. R.C.2950.09(B)(3) lists ten factors for a court to consider in determining whether a sexual offender is a sexual predator. The factors include the following: (1) the offender's age, (2) the offender's criminal record, (3) the age of the victim, (4) whether there were multiple victims, (5) whether the offender used drugs or alcohol to impair the victim, (6) if the offender has previously been convicted of a crime, whether he completed his sentence, and if the prior offense was a sexually oriented offense, whether he completed a sex-offender program, (7) whether the offender has a mental illness or disability, (8) the nature of *Page 12 
the offender's sexual contact with the victim and whether it was part of a pattern of abuse, (9) whether the offender displayed cruelty or made threats of cruelty, and (10) any other "behavioral characteristics" that contribute to the offender's action. R.C. 2950.09(B)(3)(a) through (j).
 {¶ 34} The State must prove that an offender is a sexual predator by clear and convincing evidence. R.C. 2950.09(B)(4). "Clear and convincing evidence is evidence that will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established."Wilson, supra. The clear and convincing standard requires a higher degree of proof than "a preponderance of the evidence," but less than "evidence beyond a reasonable doubt." Id. Accordingly, we review the trial court's determination under a civil manifest weight-of-the evidence standard and will not disturb its decision if the trial court's findings are supported by some competent, credible evidence. Id.
 {¶ 35} Prior to classifying Smith as a sexual predator, the trial court addressed each of the factors enunciated above. In classifying Smith as a sexual predator, the trial court focused on the victim's age. Specifically, the trial court found that the victim was eighty-seven years old at the time of this offense, and severely impaired. Additionally, the trial court determined that Smith forged a relationship with Lewis wherein she became dependent upon him. Smith then used this relationship to get close to Lewis and ultimately rape her. Finally, the trial court considered evidence of *Page 13 
Smith's criminal history and determined that Smith's conduct suggested a pattern of abuse. The trial court demonstrated careful consideration of all the factors before it determined, by clear and convincing evidence, that Smith was a sexual predator.
 {¶ 36} In the present case, we find that there was some competent, credible evidence to support the trial court's findings that the State did prove by clear and convincing evidence, that Smith is a sexual predator. Accordingly, Smith's third assignment of error is overruled.
 {¶ 37} The judgment of the trial court is affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
CHRISTINE T. MCMONAGLE, J., and MELODY J. STEWART, J., CONCUR
 Appendix A
Assignments of Error: "I. The evidence was insufficient to support a conviction for rape and kidnapping.
 II. Appellant's convictions were against the manifest weight of the evidence.
 III. The evidence was insufficient as a matter of law to prove by clear and convincing evidence appellant is likely to engage in the future in one or more sexually oriented offenses." *Page 1