[Cite as *State v. Stout*, 2017-Ohio-8258.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ATHENS COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| CITY OF ATHENS, | : | |
| | : | |
| Plaintiff-Appellee, | : | Case No. 16CA24 |
| | : | |
| v. | : | |
| | : | DECISION AND |
| CRAIG STOUT, | : | JUDGMENT ENTRY |
| | : | |
| Defendant-Appellant. | : | RELEASED 10/16/2017 |

APPEARANCES:

Ralph C. Buss, Painesville, Ohio for Appellant

Lisa A. Eliason, Athens City Law Director, and Jessica L. Branner, Athens City Prosecutor, Athens, Ohio for Appellee.

Hoover, J.

{¶ 1} Defendant-appellant Craig Stout ("Stout") appeals the judgment of the Athens County Municipal Court convicting him of a violation of Athens City Code 7.04.01(A), Assured Clear Distance Ahead ("ACDA"). Stout was sentenced to a $40 fine; and he was ordered to pay court costs. On appeal, Stout argues that his conviction is against the manifest weight of the evidence.

{¶ 2} After reviewing the record, we conclude that Stout's conviction is not against the manifest weight of the evidence. Accordingly, we affirm the judgment of the trial court.

**I. Facts and Procedural History**

{¶ 3} On August 11, 2016, Lieutenant Adam L. Claar served Stout with a complaint citing Stout with a violation of Athens City Ordinance 7.04.01(A), ACDA. On September 29, 2016, the case proceeded to a bench trial. The following evidence was presented, in relevant part:

{¶ 4} Lesa A. Withers ("Withers") testified that on August 1, 2016, she was involved in a traffic accident on North Court Street in Athens, Ohio in which she collided with Stout. Withers was at the traffic light facing east at the intersection of West Washington Street and Court Street by the Sheriff's office. Withers testified that she turned left into the left hand lane of North Court Street and immediately merged into the right hand lane. Withers merged right on North Court Street because she wanted to park in a vacant parking space located on the right hand side of the road.

{¶ 5} Withers claimed that before she merged into the right hand lane, it was clear. Withers testified that she did not see motorcycles in her rearview mirror. She glanced in her rearview mirror and "nobody was there"; however, as she was pulling into the parking spot, the motorcycle driven by Stout came "up to [her] right and came all the way down to the side of [her] right of [her] car. Body slammed the parking meter. And struck the right fender of [her] car." The hubcap on Withers's vehicle was also damaged as a result of the collision with Stout's motorcycle.

{¶ 6} Next, Lieutenant Adam Claar ("Lt. Claar") testified. Lt. Claar was the officer who investigated the crash. When Lt. Claar arrived on the scene, Stout was on the ground with a leg injury; and Withers's vehicle was stopped. Lt. Claar spoke to both Withers and Stout; and he also took photographs at the scene of the incident. Lt. Claar opined that the crash occurred at a low speed and that the point of impact was "right in the area of the parking spaces." Lt. Claar believed that the crash occurred in the parking spot, not the lane of travel.

{¶ 7} As a part of Lt. Claar's investigation, he obtained video footage from Lucky's Bar, the Athens County Courthouse and the City of Athens from cameras located at Court and Washington Street. During the bench trial, the Lucky's video was played. Lt. Claar testified during the video that Withers was "clearly in the right lane" and then Stout's "vehicle comes into the right of it." Lt. Claar testified to his recollection of the contents of the city's video. Lt. Claar testified that the video showed Stout "taking off [from the stop light] at a higher rate of speed and operating his vehicle too fast to bring it to a stop in a congested uptown area."

{¶ 8} Lt. Claar charged neither Withers nor Stout on the day of the incident because he did not have all the facts. Both Withers and Stout gave different versions of the occurrence; therefore, Lt. Claar followed-up by obtaining the video footage. Lt. Claar explained that the Lucky's video demonstrated that Withers's vehicle was clearly in the right hand lane; and Withers was ahead of Stout.

{¶ 9} Stout provided a different version of the incident. Stout is a mechanic who works at the Harley shop in Athens. Stout was also a helicopter mechanic in the Marine Corps in Iraq. Prior to the collision on North Court Street, Stout and his father were riding their motorcycles. They were side by side behind a silver car that was stopped facing north at the red light at the intersection of Court Street and Washington Street. Beside the silver car was a red car. When the light changed from red to green, the silver car "was moving faster than the red car to its right." Stout decided that "there was a gap large enough for [his] motorcycle…to traverse through." Thus, Stout decided to change his lane and travel into the right lane ahead of the red car. Stout testified that because he was planning to make a right turn onto Carpenter Street at the end of Court Street, he wanted to get in the right lane as soon as possible so that he would not "have to fight later on."

{¶ 10} Stout explained that he got into the right lane almost immediately at the other side of the intersection of Court Street and Washington Street. As Stout was going around the silver car, he noticed Withers's vehicle coming over towards the lane. Stout proceeded to "move as far to the right hand side of the lane as [he] possible could which, in turn, ended up being the parking spot." As soon as Stout began to enter the parking spot to try to avoid Withers's vehicle, the crash occurred. Stout testified that his motorcycle made impact with the vehicle from the front left peg all the way to the front axle of the bike. Stout's front axle made the hole in the middle of Withers's hubcap. Stout explained that he was not trying to pass Withers, "other than the fact that she was already in the left hand lane. And started to come over towards [him]. Then [Stout] attempted to pass [Withers] into the parking spot because there was no other option that, but to try to get out of the way."

{¶ 11} After all of the evidence was presented and closing arguments were given, the trial court ruled from the bench finding Stout guilty of the violation of ACDA. Prior to finding Stout guilty, the trial court noted that it had the advantage of viewing the stop frame photographs of the Lucky's video. The trial court pointed out that the photographs showed that Withers's vehicle was fully in the right lane; and the dividing line could be seen in the photographs. The trial court interpreted the photographs to mean that Withers was in the lane prior to Stout being in the lane. Consequently, the trial court found that Withers "had a priority to [the right] lane" as she was there first; and it was Stout's "responsibility to make sure that there was not an accident."

{¶ 12} After the trial court found Stout guilty of a violation of ACDA, the trial court next sentenced Stout to a $40 fine and ordered Stout to pay court costs.

{¶ 13} Stout timely appeals.

## II. Assignments of Error

{¶ 14} Stout presents the following assignment of error for our review:

ASSIGNMENT OF ERROR:

THE TRIAL COURT'S JUDGMENT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

## III. Law and Analysis

### A. Standard of Review for Manifest Weight of the Evidence Argument

{¶ 15} In his sole assignment of error, Stout argues that his conviction is against the manifest weight of the evidence. "When an appellate court considers a claim that a conviction is against the manifest weight of the evidence, the court must dutifully examine the entire record, weigh the evidence, and consider the credibility of witnesses." *State v. Topping,* 4th Dist. Lawrence No. 11CA6, 2012–Ohio–5617, ¶ 60. "The reviewing court must bear in mind, however, that credibility generally is an issue for the trier of fact to resolve." *Id.,* citing *State v. Issa,* 93 Ohio St.3d 49, 67, 752 N.E.2d 904 (2001), and *State v. DeHass,* 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus. This is so because "[t]he trier of fact 'is best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of the proffered testimony.' " *State v. Pippen,* 4th Dist. Scioto No. 11CA3412, 2012–Ohio–4692, ¶ 31, quoting *Seasons Coal Co. v. Cleveland,* 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984).

{¶ 16} "Once the reviewing court finishes its examination, the court may reverse the judgment of conviction only if it appears that the fact-finder, when resolving the conflicts in evidence, clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." (Quotations omitted.) *State v. Davis,* 4th Dist. Ross No. 12CA3336, 2013–Ohio–1504, ¶ 14.

{¶ 17} If the prosecution presented substantial evidence upon which the trier of fact reasonably could conclude, beyond a reasonable doubt, that the essential elements of the offense had been established, the judgment of conviction is not against the manifest weight of the evidence. *State v. Cooper,* 170 Ohio App.3d 418, 2007–Ohio–1186, 867 N.E.2d 493, ¶ 16 (4th Dist.). A reviewing court should find a conviction against the manifest weight of the evidence " 'only in the exceptional case in which the evidence weighs heavily against the conviction.' " *State v. Thompkins,* 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), quoting *State v. Martin,* 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983); *see also State v. Lindsey,* 87 Ohio St.3d 479, 483, 721 N.E.2d 995 (2000).

{¶ 18} When applying the above standard of review, we disagree with Stout's assertion that the trial court's judgment was against the manifest weight of the evidence.

### B. Assured Clear Distance Ahead Ordinance

{¶ 19} Athens City Ordinance 7.04.01(A) is the ordinance at issue here. It reads as follows:

> (A) No person shall operate a motor vehicle, trackless trolley, or streetcar at a speed greater or less than is reasonable or proper, having due regard to the traffic, surface, and width of the street or highway and any other conditions, and no person shall drive any motor vehicle, trackless trolley, or streetcar in and upon any street or highway at a greater speed than will permit him to bring it to a stop within the assured clear distance ahead.

{¶ 20} The Athens City Ordinance 7.04.01(A) mirrors R.C. 4511.21(A). "To establish a violation of that statute, the prosecution must establish that the driver collided with an object that (1) was ahead of him in his path of travel, (2) was stationary or moving in the same direction as

the driver, (3) did not suddenly appear in the driver's path, and (4) was reasonably discernible."

*State v. Passmore*, 4th Dist. Pickaway No. 04CA28, 2005-Ohio-1569, ¶ 7, citing *Pond v. Leslein*,

72 Ohio St.3d 50, 52, 647 N.E.2d 477 (1995); *see also State v. Hochstetler,* 9th Dist. Wayne No.

03CA0025, 2004-Ohio-595, ¶ 11; *State v. Lippencott*, 10th Dist. Franklin No. 00AP-491, 2000

WL 1724876 (Nov. 21, 2000).

### C. The Trial Court's Judgment Was Not Against the

### Manifest Weight of the Evidence

{¶ 21} Stout argues that Withers made an abrupt merging maneuver directly into his path

and suddenly appeared in his path. Stout asserts that he was travelling lawfully on North Court

Street in the right lane when Withers, who was in the left lane, began to move directly into his

lane of travel. On the other hand, the State of Ohio, City of Athens, ("State") contends that it

presented substantial evidence that Stout failed to maintain an assured clear distance ahead. The

State asserts that the testimony of Withers and Lt. Claar and the video and photographic evidence

provided the trial court substantial evidence to prove its case.

{¶ 22} The State further urges us to rule similarly in this case as we did in *State v.

Passmore*, 4th Dist. Pickaway No. 04CA28, 2005-Ohio-1569. In *Passmore*, this court affirmed

the trial court's judgment convicting Passmore of a violation of 4511.21(A), ACDA. Passmore

had argued unsuccessfully that his conviction was against the manifest weight of the evidence.

*Id.* at ¶ 6. Passmore asserted, like Stout, that the other driver suddenly turned into his lane of

travel. However, this court found that the evidence failed to support Passmore's contention.

{¶ 23} In the case sub judice, substantial evidence was presented that demonstrates that

Withers was (1) ahead of Stout in his path of travel; (2) stationary or moving in the same

direction as Stout; and (3) reasonably discernible. Withers claimed that before she merged into

the right lane, it was clear. Lt. Claar explained that the Lucky's video revealed that Withers's vehicle was clearly in the right hand lane; and Withers was ahead of Stout. The stop frame photographs of the Lucky's video show Withers's vehicle fully in the right lane as the dividing line could be seen in the photographs. The motorcycle wheel is not seen in the stop frame photographs until such time that Withers's vehicle is fully in the right lane. Even Stout admitted that as he was going around the silver car, he noticed Withers's vehicle ahead of him.

{¶ 24} The issue then, like in *Passmore*, was whether Withers's vehicle "suddenly appeared" in Stout's path. Withers asserted that before she merged into the right lane, she did not see motorcycles in her rearview mirror. It was not until Withers was pulling into the parking spots that Stout's motorcycle struck her vehicle. It was Lt. Claar's belief that the crash occurred "right in the area of the parking spaces" not the lane of travel. In addition, Lt. Claar testified that the city's video showed Stout "taking off [from the stop light] at a higher rate of speed and operating his vehicle too fast to bring it to a stop in a congested uptown area."

{¶ 25} The trial court did point out, however, that the entire packet of stop frame photographs from the Lucky's video spans only a time period of two seconds. However, during that time period, the trial court found that Withers's vehicle is fully in the right lane prior to Stout's motorcycle wheel appearing in the photographs; and the dividing line can be seen in the photos. The trial court also acknowledged that Stout's motorcycle had greater acceleration than Withers's vehicle; and the trial court also recognized the fact that the damage to Withers's vehicle was at the right front fender rather than the rear of the vehicle. The trial court explained that although this was unusual for an ACDA case, it could still be considered as an impact from behind as Stout was "coming up from behind and on the right."

{¶ 26} In sum, the trial court had before it substantial evidence to conclude that Withers's vehicle did not "suddenly appear" in Stout's path and that Stout violated the ACDA ordinance. The trier of fact believed that Withers's established her right to the lane of travel and that "it was Stout's responsibility to make sure there was not an accident." Moreover, the trier of fact apparently found the State's version of events more credible than Stout's; and the trier of fact was free to do so. We cannot say that the fact-finder, when resolving the conflicts in evidence, clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed. This is not an exceptional case where the evidence weighs heavily in favor of Stout.

{¶ 27} Accordingly, we overrule Stout's assignment of error.

## IV. Conclusion

{¶ 28} Having overruled Stout's assignment of error, we affirm the judgment of the trial court.

JUDGMENT AFFIRMED.

**JUDGMENT ENTRY**

It is ordered that the JUDGMENT IS AFFIRMED. Appellant shall pay the costs.

The Court finds that reasonable grounds existed for this appeal.

It is ordered that a special mandate issue out of this Court directing the Athens County Municipal Court to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Harsha, J., and McFarland, J.: Concur in Judgment and Opinion.


                                        For the Court


                                        BY: _____
                                              Marie Hoover, Judge




                        **NOTICE TO COUNSEL**


        **Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**